JESSE BROWN *againt* HARTFORD INSURANCE COMPANY.

In a policy of insurance, the clause *"prior in date"* referring to other policies upon the same risk, is equivalent with *prior in time.*

WRIT of error.

This was an action of *assumpsit*, upon a policy of insurance, upon goods on board the brigantine *Ontario*, from *Martinico* to *New-York*, or *New-London;* against dangers of the sea, &c.

The plaintiff stated his interest—a loss by tempest—an abandonment, and a demand.

The defendants pleaded, that it was provided in their policy, that "if the assured had made any other assurance upon the premises, *prior in date* to this policy, then the said assurers shall be answerable only for so much, as the amount of such prior assurance may be deficient, towards fully covering the premises hereby assured; and that the *Hartford Insurance Company* shall return the premium upon so much of the sum by them assured, as they shall be, by such prior assurance, exonerated from; and that in case of any assurance upon the said premises *subsequent in date* to this policy, the said *Hartford Insurance Company* shall, nevertheless, be answerable for the full extent of the sum by them subscribed hereto, without

right to claim contribution from such subsequent assu- <span>June, 1808.</span>
rers; and shall accordingly be entitled to retain the
premium by them received, in the same manner as if <span>BROWN<br>v.<br>HARTFORD<br>INS. CO.</span>
no subsequent assurance had been made:" and then
averred that the plaintiff, prior to the assurance made by
the defendants, had procured insurance upon said goods
to the amount of 20,000 dollars, (viz.) 15,000 dollars at
*Boston*, on the 1st of *February*, 1805, and 5,000 dollars
at *Middletown*, by the *Middletown Insurance Company*,
by a policy dated the 7th day of *March*, 1805; (which
policy contained a clause similar to that above recited
in the policy made by the defendants;) which assurances
were both made *before* and were *prior to the date* of the
policy made by the defendants, (viz.) the one at *Boston*,
on the 1st of *February*, 1805; the other at *Middletown*, on
the 7th *day of March*, 1805, between the hours of nine
and eleven in the forenoon; and that the assurance
made by the defendants was made *afterwards, on the said
7th day of March*, 1805, between the hours of seven and
eight in the afternoon of said day: that the insurable in-
terest of the plaintiff in said cargo amounted to the
sum of 22,050 dollars and 86 cents, and no more; and
the defendants had paid to the plaintiff the sum of
2,050 dollars and 86 cents, the amount of his interest
beyond the sums insured by the former policies.

To this plea there was a demurrer; and it was adjudged
sufficient, by the superior court; upon which judgment
this writ of error was brought.

*Dana* and *Hosmer*, for the plaintiff.

The sole question is, whether the policy made at *Mid-
dletown*, the *same day* with that at *Hartford*, though be-
fore, *is prior in date* to the latter. Do those words mean
before the moment, or act, of underwriting the policy;
or do they mean, before the date, *expressed or apparent
on the face* of the policy?

The word " *date*" has sometimes been taken to mean the act or minute of delivery ;(*a*) but this is contrary to the usual acceptation, in consequence of other words, showing the intent, *ut res magis valeat, quam pereat.* But when the word " *date*" is not limited, or qualified, by something extrinsic, it always denotes the date expressed. Thus, when we speak of the date of a letter, a note, or a declaration, we always mean the date therein expressed. So *the date* is said to be the day, month and year ;(*b*) and bearing date is of the same import.(*c*)

We are not, then, to look to the etymology of the word for its construction ; for from the *arbitrary* use and fluctuation of language, the popular meaning of words differs much from that of the root from whence they are derived.(*d*)

*Usus est jus, et norma loquendi:*(*e*) usage decides upon the force of language.

Deeds take effect not from their *date*, but from delivery.(*f*) Date and delivery are here used, not as synonymous, but in opposition to each other.

From *henceforth* means from the *making* or delivery. *Clayton's case.*(*g*) The statute of 27 *Hen.* VIII. concerning enrolments, expressed, that they must be made within six months after *the date;* if such writing have a date, the six months shall be computed, not from *the delivery,* but from *the date.*

(*a*) *Hatter* v. *Ash,* 3 *Lev.* 438. *Gilb. Law Ev.* 210. 456.

(*b*) 1 *Marsh. Ins.* 241. (*c*) *Co. Litt.* 6. (*d*) 1 *Pow. on Cont.* 373.

(*e*) 1 *Bl. Comm.* 359. *Cowp.* 704. (*f*) *Shep. Prec.* 69.

(*g*) 5 *Co.* 1.

In an *anonymous case,*(a) *Holt*, Ch. J. says, a date of a deed is *express*, or *implied;* the express date is the very day, and year, in which the deed was made; and this is always intended, when it is said, *bearing date;* the other is the implied date, which is the *delivery.*

In *Goddard's case,*(b) it is said, " The date of a deed is not of the substance of a deed; for if it hath no date, or a false or impossible date, yet the deed is good. For there are but three things of the essence and substance of a deed; that is to say, writing, in paper or parchment; sealing; and *delivering.* And when a deed is delivered, it takes effect by the *delivery,* and not from the *date.*" Here again, Lord *Coke* distinguishes the *date* from the *delivery.* " *I. S.* makes an obligation dated and delivered the 1st of *May:* on the 1st of *June* the obligee made a release bearing date 1st of *March*, but delivered the 1st of *June*, releasing all actions, *ab origine mundi*, until the date of the release. And all the justices were of opinion, that the obligation was not released." *Drury's case.*(c) Here, the date is settled to mean the expressed date.

In *Pugh* v. *Leeds,*(d) Lord *Mansfield* says, what is the date? It is a memorandum of the day when the deed was delivered. In *Latin*, it is *datum;* and *datum tali die,* is delivered on such a day.

Then in point of law, there is no fraction of a day; it is an indivisible point. What is the day of the date. It is the day the deed is delivered. The *date,* therefore, and *the day of the date,* must be the *same thing. It is impossible, in common sense, to distinguish the one from the other.* Date does not mean the *hour* or the *minute,* but the *day* of *delivery*, and in law there is *no fraction of a day.*

(a) 3 *Salk.* 120.     (b) 2 *Co.* 5.     (c) *Cro. Eliz.* 14.     (d) *Cowp.* 704.

June, 1808.

BROWN
v.
HARTFORD
INS. Co.

As to the other point, that *from* should, in all cases, be construed to be exclusive, it is contrary *to the common signification of language.* And for courts of justice to determine words against the intention of parties, and *against the generally received sense and acceptation of the words themselves, is laying a snare to entrap mankind.*

The multiplied contradictory determinations upon the words *"from the date"* would never have existed, had *date* been supposed to mean delivery; and the reason why *date* means the *expressed date,* is because it is not necessary, in one instance out of a hundred, to distinguish the moment of delivery, but the day only.

The construction contended for, by the plaintiff, is the most *equitable,* as it divides the loss equally among the insurers.(*a*)

It is not to be supposed, that the speaker will hurt himself; and if his words are construed in the sense which is strongest against him, it makes it for his interest to avoid intricate and ambiguous expressions.(*b*)

But if the *reason* on which the stipulation is founded is brought in to aid the construction, we ought to be certain that the true reason is known; and not be led to adopt vague and uncertain conjectures.(*c*) If the words are *clear,* and present nothing absurd, they must have a controlling influence, without reference to the reason or *motive* inducing the contract.(*d*) So the preamble to a statute may be called in to *explain,* but cannot control the enacting clause, expressed in clear, and unambiguous terms.(*e*)

What was *the reason* of this stipulation? The defend-

(*a*) *Marsh. Ins.* 115.   (*b*) *Gilb. Law Ev.* 213.   1 *Pow. on Cont.* 395.
(*c*) *Vattel,* 385.       (*d*) *Vattel,* 386.       (*e*) 4 *Term Rep.* 793.

ants were unwilling to assume risks already covered; and therefore, on principles of *convenience* and security, and to prevent litigation and expense, and the perils of oral testimony, they assumed the *express date* of policies as the standard by which their responsibility was to be tested. This is our *conjecture;* the *reason* is not, and cannot be certainly known.

But had not the parties intended to have avoided this confusion, they would have used the word "*prior*" instead of the words " *prior in date.*" As they have not, there is reason to suppose that they thought, with Lord *Coke*,(a) that fractions in a day would be " *the mother of confusion and contention.*"

The plaintiff does not contend, that a wagering policy would be good. But the case of double insurance is like that of sureties: the party has a double security, but founded upon one interest.

*Goodrich* and *T. S. Williams*, for the defendants.

What did the parties intend by this clause in the policy? And is their intent to be pursued?

To determine what the parties intended, it is necessary to inquire what would have been their situation without this clause by the *English* law, from which we have borrowed ours. By that law, as at present understood, where there are insurers to more than the amount of the interest, the insured may collect the sum insured of the last underwriter, or the first, at his election; and the person from whom he collects it may resort to the other underwriters, and compel them to contribute according to the sums by them insured.

(a) 5 *Co.* 1.

The evils from this mode are various. It gives the assured a right to alter the situation of the assurer without his consent, by a subsequent insurance. It makes the underwriters insure the solvency of each other. It makes those who write on the same policy partners with each other. It compels them, as the case may be, to resort to foreign jurisdictions to procure contribution from those with whom the insured may have chosen to contract. But above all, it holds out a temptation, and affords a shelter for fraud. *Miller on Ins.* 265.

To prevent these evils, the underwriters in this country have generally inserted a clause in their policies similar to the one under consideration, by which they intended to avoid these inconveniences, and to cut up by the roots this doctrine of contribution. And the questions between us is, may not the words used be so construed as to give effect to this intent?

The words used are "*prior in date*." Had they used the word "*prior*" only, it is agreed, that there would have been no doubt as to the construction. Did they intend to limit it, by introducing the word "*date*." What is the *date?* *Johnson*, in his *Dictionary*, gives as one definition "*the time at which an event happened.*" It is said to be the very *act* of *delivery* of a deed, and is from *datus.* 3 *Lev.* 439. So, Lord *Coke* says, it means the *time* of execution or delivery, and takes effect from that time. 2 *Co.* 5. It is not of the substance of a deed. *Yelv.* 193. And when it is mistaken, the plaintiff may prove the time of actual delivery. 3 *Lev.* 348. *Cro. Eliz.* 890.

Lord *Mansfield*, indeed, says, that date means the *day*, not the *hour* or *minute* of delivery; and there is no fraction of a day. *Cowp.* 720. But these words are to be taken as relative to the case before him; and as only

a general rule :—Because the same judge always held, that fictions were not to be urged, contrary to the justice of the case. 3 *Burr.* 1243 3 *Wils.* 274. And in *Combe* v. *Pitt*, 3 *Burr.* 1434. he says, not only the *day* but the *time of day* may be averred to show which is prior ; " for the day is not like a mathematical point, which cannot be divided." So long as there are hours and minutes, different transactions will be done at different hours of the same day. And there are many cases where an inquiry is made as to the time of day when an act is done, as where there is a claim of the attaching creditor, or one creditor claiming by a *deed*, and one by an attachment of the same date. So, where there is an execution, and commission of bankruptcy, on the same day ; an inquiry may be had as to the priority of either. 8 *Ves.* jun. 82. So an action for words will lie upon the very day on which they were spoken. *Styles*, 72. So when a note and a release are executed on the *same day*, the party may aver which was first. *Co. Litt.* 46. *Pow. on Powers*, 532. And *Drury's case* is nothing more than this. *Cro. Eliz.* 14. When there are two bottomry bonds, the one of the *last date* is to be preferred. *Abbott*, 112. But if there were two of the same date, is there any doubt but the last would be preferred, though the date was the same. *Caines*, the only writer who speaks of this clause in our policies, treats these words " *prior in date*," as synonymous to the word *previous*. *Lex Merc. Amer.* 817.

The term *date* means no more the apparent date than the real date. The true meaning is, when the thing was done. If by " *prior in date*" was meant only the apparent date, then the clause introduced with so much care into all our policies would be of no avail ; because the assured need only procure a policy dated so as to meet his own risks, and its effect is destroyed. The real date must, therefore, in this case, as in all

June, 1808. others, when it differs from the apparent date, be as-

BROWN
v.
HARTFORD
INS. CO.

certained by parol proof.

But aside from the words made use of, in this clause of the policy, it is worthy of consideration whether the defendant would be liable. The plaintiff having covered his interest is sure of an *indemnity*. Any attempt to do more is in nature of a *wagering* policy, and therefore void by our statute concerning gaming, and by the general principles of common law.

The construction *at present* given to such insurances in *England*, must be founded upon their own customs, and is certainly contrary to every analogous case. It is contrary to the ordinances of almost every commercial nation, viz. to those of *Antwerp*, *Genoa*, *Spain*, *France*, *Bilboa*, *Florence*, *Amsterdam*, *Hamburgh* and *Stockholm*. 2 *Mag.* 27. 65. 34. 172. 412. 134. 222. 267, 268. Indeed, that writer says, it is the *universal* custom, that the first insurance stands good, and the last returns the premium. 1 *Mag.* 90. *Park*, 288. So was the former custom in *Great Britain*, as proved by *all the exchange.* 1 *Show.* 132. And this *Malyne* calls the *rare custom* of insurance. *Mill.* 266. This is, indeed, changed by modern decisions. *Marsh.* 117. But our courts, it is believed, will hesitate, before they recognise those decisions in this state; and will adopt the maxim, that *via antiqua via est tuta.*

*By the Court*, GRISWOLD, J. not sitting.

The only question presented by this record arises from the phrase "*prior in date.*" The day of the date of both policies being the same, it is contended that, as the law does not notice the fractions of a day, it is incompetent for the defendants to aver, or prove, the *hour* of execution, to show priority of time.

It is true, generally, that the law disregards the frac-
tions of a day, because generally it is not important; but
the rule is not universal. It is clearly otherwise, where
the precise time is important for the attainment of jus-
tice. Contests of this kind frequently occur between
attaching creditors under our statute, and between op-
posing claimants under record titles. In these, and many
similar cases, priority of time in the same day is always
an issuable fact.

It was evidently the intention of the contracting par-
ties in these policies, to avoid the inconvenience of con-
tribution, by making the insurers liable in the order
of time. This was anciently the law in *England;*
modern practice there had introduced a different rule.
The parties intended, by inserting the clause in ques-
tion, to abolish the modern, and restore the ancient, rule.
This being their object, it is unreasonable to suppose
that the parties, while thus attempting to alter the rule,
should leave a portion of time, viz. a day, subject to the
inconvenience of a rule they evidently intended to avoid.
The fair inference is, that they altered the rule, not
only generally, but universally ; and that their expres-
sions, if not explicit, are to receive such construction
as will effect the apparent object of the contracting par-
ties.

We are, therefore, of opinion, that the expression
"*prior in date,*" as used in these policies, is equivalent
with *prior in time;* and that it was, of course, competent
for the defendants to aver and prove the precise time of
execution; and that there is nothing erroneous in the
record before us.

Judgment affirmed.