(Decided May 9th, 1860.)

---

## JAMES WHITING, use of the SUN MUTUAL INSURANCE COMPANY *vs.* THE INDEPENDENT MUTUAL INSURANCE COMPANY.

Three policies, on a vessel, the first for $7300, the second for $7400, and the third for $7300, were effected on three successive days; in three separate insurance companies. Each policy contained the *American clause*, and covered the same period and the same risks, and in each the vessel was valued at $22,000. A loss of $2189.04 occurred, and the assured brought three suits therefor, one against each of the companies. In that against the *first* company he recovered a *judgment* for the *whole amount* of the loss, which was *paid by that company*, and the judgment *satisfied*. The suit against the *second* company was then entered *for the use* of the *first* company and was prosecuted for *its* benefit to recover the proportion of the loss for which the second company was answerable on its policy. HELD:

1st. That the liability of the second company on *its* policy *was not*, in any manner, affected by the *American clause*, and the assured had a clear right to recover from it that proportion of the loss which the amount underwritten in its policy bore to the whole amount at risk.

2nd. As soon as the loss occurred, the liability of the second company to pay its just proportion thereof was fixed, and became a *debt* due the assured, which, like any other *chose in action*, might be sued for and recovered, or *assigned*.

3rd. The several underwriters were *strangers* to each other; there was no *privity* between them, and each was liable on *its separate contract* for its just proportion of the loss; they were not co-sureties and neither was bound to pay the whole, with the right of calling on the others for contribution.

Whiting, use of Sun Mutual Ins. Co. *vs.* Independent Mutual Ins. Co.

4th. The payment of the whole amount by the *first* company did nòt discharge the *second company* from *its* liability to the *assured*, for its proportion of the loss, unless such payment was *made* and *received* with the *intention* and for the *purpose* of *satisfying* and *discharging* the *debt* due by the second company.

5th. The payment by the first company, not having been made on behalf of the second company, or for the purpose of satisfying and discharging its debt, the suit against the latter was properly entered for the use of the first company which is equitably entitled to be protected in its prosecution.

6th. The payment made to the assured, by the first company, does not enure to the benefit of the second company, which is a *stranger* to the transaction, and is no bar to a recovery in the suit against the second company.

7th. The *judgment* against the first company, for the *whole amount*, does not affect the *rights*, or *liabilities* of the second company in the suit against it; the second company was *no party* to that judgment; it was *res inter alios*, and neither binds nor discharges the second company; *inter partes* the judgment is an estoppel, but it cannot operate on *strangers*.

On a marine policy of insurance, the liability of the underwriter for loss, whether total or partial, is to pay that proportion which the amount underwritten bears to the whole amount at risk.

The proviso in marine policies, generally called "*The American clause*," is to be construed by its terms, in the same manner as any other written instrument, and so construed, it applies only to cases of *double insurance*.

The purpose for which the clause was introduced, although it may afford some aid in arriving at its meaning, cannot control the construction of its language.

Where the assured, *after loss*, assigns his right to recover that loss, such assignment, like that of any other *chose in action*, gives the assignee an equitable interest and a right to recover, in the name of the assignor, subject to set-off and all other equities.

Where a stranger pays the debt of another, without his consent or knowledge, such payment does not necessarily discharge the debtor and cannot be taken advantage by him unless he can show it was intended by the payer and receiver to operate a discharge.

When it is said a marine or fire insurance is a contract of *indemnity*, the meaning is, that in order to support it the assured must have some interest in the thing insured, which *is* at risk and liable to be injured, and that no action can be maintained on the policy, unless there has been some loss incurred.

APPEAL from the Superior Court of Baltimore city.

In this case an action of *assumpsit* was brought at May term 1855, of the court below, by the appellant, Whiting, against the appellee, on a policy of insurance, made by the defendant, on the 16th of March 1854, to the amount of $7400, on the barque "A. A. Drebert," valued in the policy at $22,000. Plea *non assumpsit*, with agreement to waive all objections to the form of action and errors in pleading, and with leave to either party to give in evidence any matter which would be admissible under any form of action or issue. The record also shows that some time prior to the trial the case was entered for the use of the Sun Mutual Insurance Company.

*Exception.* At the trial an agreement of facts was submitted, from which it appears that Whiting, the owner of the vessel, obtained three policies of insurance upon her in each of which she was valued at $22,000, viz., one from the Sun Mutual Insurance Company, dated the 15th of March 1854, to the amount of $7300; one from the Independent Mutual Insurance Company, dated the 16th of March 1854, to the amount of $7400, and one from the Commercial Insurance Company, dated the 17th of March 1854, to the amount of $7300. Each of these policies were for the same period and covered the same risks, and were produced and read to the jury, and each of them contained the proviso or clause set out in the opinion of this court, similar to that known as the "*American clause.*" The vessel sailed upon the voyage indicated in the policies and sustained injury from the perils insured against, to the amount of $2189.04, after deducting new for old. After the occurrence of this loss, Whiting instituted three suits (of which this is one) against each of said companies. and, on the 4th of December 1855, *recovered judgment* against the *Sun Mutual Insurance Company* for the *whole amount* of the above loss, with costs, and this judgment was *satisfied and paid in full* by the Sun Mutual Insurance Company; during the trial of that case no question of the proportionate or *pro rata* liability of said company was raised by the Sun Mutual Insurance Company, or its attor-

ney, and, on satisfaction of said judgment by the Sun Mu-
tual Insurance Company, Whiting paid to the Independent
Mutual Insurance Company the premium which was in the
consideration for the insurance made by that company. The
registry and American ownership of the vessel were also ad-
mitted, and it was agreed that any or all of the above facts
may be offered in evidence under the present pleadings in
the case in the same manner as if the matter had been spe-
cially pleaded by pleas *puis darrein continuance* or otherwise,
and also that they may be given in evidence under this agree-
ment, in the case of *The Sun Mutual Insurance Company
vs. The Independent Mutual Insurance Company,* now pend-
ing in the Superior Court.   The defendant then offered two
prayers, in substance as follows.

1st. If the jury find, from the evidence, that prior to the
date of the policy sued on, Whiting had made another insur-
ance upon his vessel, for the same voyage, in the Sun Mu-
tual Insurance Company, and that the injury for the indem-
nity of which this action was brought, was occasioned by
perils insured against in each of these policies, and that the
whole amount of the injury did not exceed the sum for
which the vessel was insured in the Sun Mutual Insurance
Company, and that he sued for and has recovered full indem-
nity for such injury in an action against the Sun Mutual In-
surance Company, then the jury must, in this case, find a
verdict for the defendant.

2nd. (*Alternative prayer.*) If the jury find, from the evi-
dence, that Whiting was insured on his vessel on the same
voyage in each of the three companies above mentioned, and
that the loss was from perils insured against in each of these
companies, then the plaintiff in this action is only entitled
to recover from this defendant such proportion of said loss as
the sum insured by this defendant bears to the amount at
which the vessel is valued in the policy on which this suit is
brought.

The plaintiff then asked the court to instruct the jury, that
upon the facts admitted in this cause, the Sun Mutual In-
surance Company were to the plaintiff responsible for only

$\frac{7300}{23000}$ of the loss mentioned in the statement of facts, and that any payment beyond the proportion for which the said company was so liable to the plaintiff, does not exonerate the defendant in this cause from any loss for which the defendant was liable, provided the jury shall find that this suit is now prosecuted for the benefit of the Sun Mutual Insurance Company.

Whilst these prayers were being discussed, and before the court had given any decision thereon, the plaintiff's counsel made to the defendant's counsel the offer set out in the opinion of Judge Eccleston. The court (LEE, J.) then rejected the plaintiff's prayer, and without passing on those of the defendant, instructed the jury that upon the facts stated in the admissions of facts, their verdict must be for the defendant. To which ruling of the court, rejecting the plaintiff's prayer, and instruction to the jury, the plaintiff excepted, and the verdict and judgment being in favor of the defendant, the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Vivian Brent* and *Levin Gale,* for the appellant, argued:

1st. That each of the policies was upon separate and distinct interests in the vessel. That consequently there was no *double* or over insurance to which the American clause could apply, and that, there being no double or over insurance, the company now sued, has nothing to do with what was paid by, or recovered from, the other companies, and cannot defend itself on account of any transactions with those companies. 3 *Kent,* 347. 2 *Parson's Maritime Law,* 97, 100. 2 *Phillips on Ins.,* secs. 1176, 1261. *Angell on Fire & Life Ins.,* secs. 249, 271. 16 *Wend.,* 386, *Ætna Fire Ins. Co. vs. Tyler.* 14 *Wend.,* 399, *American Ins. Co. vs. Griswold.* 2 *Barn. & Cress.,* 255, *Clark vs. Blything.* 2 *Marshall on Ins.,* 691, *Mason vs. Sanisbury.* 4 *Bing.,* N. C., 272, *Yates vs. Whyte, et al.* 80 *Eng. C. L. Rep.,* 365, *Dalby vs. Life Ins. Co.* 4 *Mass,* 336, *Stetson vs. Mass. Fire Ins.*

Co. 15 *Moss*, 344., *Coolidge vs. Gloucester Marine Ins. Co.* 2 *B. Monroe*, 50, *Franklin Ins. Co. vs. Drake.*

2nd. That the payment of the Sun Mutual Insurance Company did not operate to extinguish the claims against the other companies, especially as between the plaintiff and that company, since the settlement is treated by both of them as an equitable assignment, and this suit is now actually prosecuted for the benefit of the Sun Mutual Insurance Company. 5 *H. & J.*, 423, *Merryman vs. The State.* 14 *Wend.*, 399, *American Ins. Co. vs. Griswold.* 3 *Metcalf*, 69, *Wilson vs. Hill.* 1 *Wheat.*, 233, *Welch vs. Mandeville.* 2 *G. & J.*, 344, *Williamson vs. Allen.*

*A. S. Ridgely*, for the appellee:

1st. Every insurance to which the law gives effect is, in its nature, a contract for indemnity from loss, as distinguished from a contract by way of gaming or wagering. It is in its. nature, a guaranty of the insured against loss or injury to the subject of the insurance, by the intervention of some peril covered by the policy. Its intention is not to put the party insured in as good condition as he would in fact have been had no loss happened. It only means that he shall be repaid the expenses incurred, and so much of the insured subject as is lost. 1 *Phillips on Ins.*, secs. 1, 2, 124. 9 *East*, 81, 82, *Godsall vs. Boldero.* By the proof in this cause, what were the expenses incurred, and how much of the insured subject was lost? The only proof is in the statement of facts, which admits the vessel was injured to the amount of $2189.04, and the only inquiry now is, has that sum been paid the assured? by whom, and under what circumstances? and the effect of that payment upon the rights of the plaintiff to recover in this action? The statement of facts shows that three suits were brought, one against each of the insuring companies *for this amount.* The case against the Sun Mutual Insurance Company was prosecuted, and judgment recovered for the *whole* of this amount, and the plaintiff was of this judgment *satisfied* and paid *in full* by that company. In other words, the assured's claim

for full indemnity was prosecuted to judgment against that company, and, by payment of that judgment, was satisfied in full. Assuming, therefore, that a right of action existed originally against all three of these companies, the right was arrested the instant Whiting received full indemnity for his loss, no matter from what source that indemnity was derived. 2 *Smith's Lead. Cases*, (5 *Amer. Ed.,*) 309. 2 *Barn. & Adol.*, 193, *Irving vs. Richardson.* It is submitted, therefore, that upon the facts admitted in this case, the plaintiff was not entitled to recover. The indemnification of the insured, in respect to which his action upon the insurance contract is alone maintainable, was obviated by the payment made by the Sun Mutual Insurance Company. The plaintiff's demand is for indemnity. In the language of Lord Mansfield, 2 *Burr.*, 1210, "A party cannot receive two satisfactions for the same loss; whatever undoes the damnification, in whole or in part, must operate on the indemnity, in the same degree." "It is a contradiction in terms to bring an action for indemnity, when, upon the whole event, no damage has been sustained." This principle is affirmed by Lord Ellenborough, in *Godsall vs. Boldero,* 9 *East,* 82, and, though subsequently overruled as applying to insurances upon lives, it has, as respects marine and fire insurances, by both the courts in England and in this country, been re-enunciated and endorsed to the fullest extent. 2 *Smith's Lead. Cases, (5 Am. Ed.,)* 296, 309. 12 *East,* 493, *Tunno vs. Edwards.* 28 *Eng. Law & Eq. Rep.,* 312, *Dalby vs. India & London Life Ins. Co.* 2 *Barn. & Adol.,* 193, *Irving vs. Richardson.* 6 *Cowen,* 635, *Lucas vs. Jefferson Ins. Co.* 11 *Metcalf,* 195, *Brinley vs. National Ins. Co.* Not only has the plaintiff received full indemnity for his loss, but the judgment against the Sun Mutual Insurance Company was treated by him as full satisfaction of that loss, as the admitted facts clearly show. Would he have paid the appellee the amount of the outstanding premium note due for his insurance, had he considered he still had a claim against it unsettled? It being shown, therefore, that the sum paid by the Sun Mutual Insurance Company was received by the plain-

tiff in full satisfaction of all the insurances, it constitutes an available defence in the present action. The case of *Lucas vs. The Jefferson Ins. Co.*, 6 *Cowen*, 635, was an insurance against fire, and, ordinarily, there is a marked distinction between marine and fire insurances, in regard to the mode of adjusting losses. In the former, unless otherwise provided in the policies, in cases of partial loss, the insurer is liable only for such proportion thereof as the amount insured by him bears to the whole amount at risk. In the latter, he is liable to make good all the actual damage sustained, if within the amount insured, whether the loss be partial or total, and this without regard to the amount of the risk taken by the assurer himself, and if there are other underwriters he has a remedy against them for contribution. *Ellis on Fire & Marine Ins.* 136. *Angell on Fire & Marine Ins.*, sec. 248. *Parson's Mercantile Law*, 537. Sometimes, however, a clause is inserted in fire policies, the operation of which is to limit the obligation of the underwriter to a *pro rata* liability. 3 *Phillips on Ins.*, sec. 1265. Such a clause was contained in the policy of the Jefferson Insurance Co., in the above case, establishing an analogy between that case and the present, and though the ruling of the court was against the defendant, it was because the facts in that case differed from those in this. There was no proof showing that Lucas had been fully indemnified, while it is admitted in this case that Whiting was. There the plaintiff's proof showed the loss to be $20,000. The Chatham and Ætna companies settled without suit, being allowed a deduction of one-sixth for prompt payment, and, the court say, the presumption was that the policies were alike as regards the *pro rata* clause, and that they only paid what they were bound to pay, not contemplating any action for contribution against the other company. Lucas claimed $20,000, and they paid only $9583.04. Nor was it any where pretended that the payment of the Chatham and Ætna companies was received in *full satisfaction of the plaintiff's loss*. Had it been so received, the ruling of the court would have been in the defendant's favor, for, on page 641, they say, "the plaintiff claims of the defendants the

proportion they were bound to pay under their policy. They contend it has been paid by other companies. But, to make this defence available, it must be shown that the companies paid, in fact, a sum of money which was received in full satisfaction of all the insurances." If these positions be sound, as between Whiting and the defendant, there can be no recovery in this action.

2nd. The next inquiry is, does the entry of the case to the use of the Sun Mutual Insurance Company, place the defendant in any worse position? We contend that it does not. As much of the strength of this position depends upon the intention of the parties, we must recur to the proviso, or American clause, as it is called, contained in each of these policies, and examine the conduct of both the legal and equitable plaintiff in the suit in which the latter was defendant. It is not proposed to discuss the origin or object of this clause, nor to examine what interpretation usage has put upon it in other cases and elsewhere. This matter has been elaborately considered in the case of the *American Ins. Co. vs. Griswold*, 14 *Wend.*, 399. The language of the clause is confessedly ambiguous. Interpreted by usage, uncontradicted by a manifest intention of the contracting parties, it may mean one thing; interpreted by that intention, it may mean another. But the maxims for the exposition of contracts are simple and consistent, and well calculated to effect their sole object, viz: to do justice between the parties by enforcing a performance of their agreement, according to the sense in which they mutually understood it at the time it was made. That the parties in this case contracted with the mutual intention that the Sun Company was to be primarily and exclusively, liable to the extent of their subscription, in the event of any loss, seems to be proved by the subsequent conduct of both, which shows that they admitted the clause, intending thereby to provide that the Sun Company should be first and only liable to the extent of $7300 in the event of loss to that amount, and that the subsequent insurances were made by Whiting, with the expectation that, in the event of the loss exceeding that amount, the other companies should be successively liable to

the extent of their separate undertakings. The reference to the return of premiums was to be effectual only in the event of over-insurance.. But as there· was is in this case no over-insurance, but aliment sufficient to feed all the policies, there was no case presented for a return of premium. The risk attached to all, and had the loss been $22000, they would all have had to pay. Had it been $14000, the first and second companies only. They confused the principle governing marine with that which governs fire insurances, save only the right of the first company to sue the subsequent insurers for contribution, which they considered expressly provided against in this clause. That this was the plaintiff's understanding, is evinced by his prosecuting the suit to judgment; otherwise his . conduct was fraudulent, which cannot be presumed. The defendant so understood it, or it would have raised the question at the trial. If usage has put a . different interpretation on the clause, knowledge of the usage (either directly or by proving its universality) must be brought home to the parties, to make it effectual in interpreting their contract. Usage is admissible in the interpretation of contracts, because it interprets the otherwise indeterminate intention of the parties. 2 *Sumner*, 567, *Schooner Reeside.* But if ·these intentions are determined by the express words of the contract, or by the conduct of the parties to the contract, or other evidence uncontradicted, the object of its admission fails; it no longer interprets the intention of the parties. 2 *Parsons on Cont.*, 50, 51. *Smith on Cont.*, 34, *note*, and cases referred to. 2 *Gill*, 78, *Benson vs. Boteler.* 2 *Md. Rep.*, 239, *Merchants Mutual Ins. Co. vs. Wilson.* 13 *Pet.*, 89, *Bradley vs. Steam Packet Co.*

. That such was their intention—their *actual contract*—looking at the verdict and judgment in the case against the Sun Company, as admitted in the statement of facts, must be presumed by the court in this case. Every thing that they could object will be presumed to have been made in the trial against them, and overruled. The court will *presume* that the *particular thing* required to sustain the judgment was proved at ·the trial. 8 *Gill*, 75, *Merrick vs. Bank of Metropolis.* If

DECEMBER TERM, 1859.        307

Whiting, use of Sun Mutual Ins. Co. *vs.* Independent Mutual Ins. Co.

the intention of the parties were, as we have contended, there can be no recovery in this action. If, however, the court think the contract cannot be thus interpreted, yet, bearing in mind the conduct of the parties, as already alluded to, we now contend that at no time, from the beginning of the suit of *Whiting vs. Sun Co.*, did either otherwise than believe that that company was answerable for the whole amount of the loss, and that the payment of the judgment was to release that company from a liability incurred, through mistake of law it may be, but not with an intention to acquire a beneficial interest in this suit, so as to entitle them to any *quasi equitable* consideration of the court. The entry of the use was an afterthought. The payment of the judgment satisfied Whiting. By it his damnification is repaired. If the loss has already been recovered and paid, the claim for a ratable proportion against this defendant is necessarily extinguished. That the plaintiff thought so, is manifest from his paying the amount of the premium due this defendant. The judgment in the case of the Sun Company was obligatory on them. They paid the whole amount to satisfy the judgment—to avoid execution—they had no alternative. Not objecting to the amount claimed against them, not raising at the trial the question of *pro rata* liability, amounts to a virtual confession of their liability for the whole amount. That they intended thus to make themselves liable for the whole of their subscription in the first instance, and then seek indemnity by way of contribution, or by having this entry to their use made, it is absurd to suppose. If, under their contract, they were liable for only $\frac{7300}{72000}$ of the loss, their permitting the judgment to go against them for the whole amount, was done either voluntarily or through ignorance. If done voluntarily, they must stand the loss—*volenti non fit injuria.* It certainly gives them no claim against this defendant. Every claim arises out of a contract, express or implied. No one can be made a debtor against his will. *2 Comyn on Cont.*, 151. *5 H. & J.*, 426, *Merryman vs. State.* 13 *Pet.*, 412, *Heirs of Emerson vs. Hall.* 1 *G. & J.*, 497, *Mayor & C. C. of Balto. vs. Hughes.* 5

*Gill*, 247, *Morris vs. Mayor & C. C. of Balto.* 1 *Parsons on Cont.*, 392. 4 *Johns.*, 244, *Hall vs. Shultz.* If through ignorance they are in no better position. *Ignorantia legis neminem excusat*, applies equally to civil rights and criminal offences. 2 *Parsons on Cont.*, 556. 6 *Clark & Finnelly*, 968, *Stewart vs. Stewart.* 4 *Gill*, 431, *Mayor & C. C. of Balto. vs. Lefferman.* 5 *Gill*, 247. If a party pay money through mistake of law, he cannot recover it back. 13 *Pet.*, 269, *Bend vs. Hoyt.* 6 *Barn. & Cress.*, 671, *Milnes vs. Duncan.* 5 *Gill*, 242, *Gordon's ex'crs vs. Mayor & C. C. of Balto.* 4 *Gill*, 431. If it was the fault of his attorneys, his remedy is against them; but as between client and third parties, whatever is done by the attorney in the progress of the cause, is done by the client, and is binding upon him to whom the attorney is answerable for the faithful discharge of his duty. 2 *Md. Ch. Dec.*, 425, *Thornburg vs. Macauley.* 3 *Md. Ch. Dec.*, 392, *Kents vs. Ricards.* 7 *H. & J.*, 278, *Henck vs. Todhunter* The entry to the use makes no difference. 3 *G. & J.*, 75, *State vs. Dorsey.* 3 *H. & J.*, 437, *Hollins vs. Barney.* The idea of having this suit entered to the use of the Sun Company formed no part of the consideration of the judgment against them. The payment was made to discharge the liability of that company, upon the judgment which was obligatory of such payment, and that company neither did nor could intend thereby to acquire any beneficial interest in this suit. 2 *G. & J.*, 356, *Williamson vs. Allen, et al.*

3rd. But the judgment against the Sun Company for the whole amount of this loss was solemnly pronounced and recorded by a court of competent jurisdiction. To this judgment no objection appears to have been made, and from it no appeal was taken. On the contrary it was acquiesced in by that company and has been paid to the plaintiff, and whether right or wrong, it cannot be inquired into in this collateral manner. It was an adjudication by a court of competent jurisdiction, and *conclusively* settled the liability of that company, upon its policy, for the whole amount of this loss. 1 *Gill*, 214, *Bowie vs. Jones.* 9 *Gill*, 241, *Popples vs. Dilley.*

3 *Md. Rep.*, 60, *Ramoul vs. Griffie.* 14 *How.*, 586, *Huff vs. Hutchinson.*

BARTOL, J., delivered the opinion of this court.

The policy on which this suit was brought was underwritten by the appellee, on the 16th of March 1854, and a partial loss having occurred from the perils insured against, the question presented for our decision is, whether the appellee is liable in this action for any portion of the loss?

On a marine policy, the liability of the underwriter for loss, whether total or partial, is to pay that proportion which the amount underwritten bears to the whole amount at risk. No authority need be cited in support of this rule; it is universally conceded to be the law governing such contracts, unless there be in the policy some stipulation to the contrary. In the case before us, which is a policy on a ship valued at $22,000, the amount insured $7400, and the loss incurred, $2189.04, the liability of the appellee, unless otherwise provided in the policy, would be $\frac{7400}{22000}$ of $2189.04. It is contended, however, that by the true construction of the policy, the appellee never was in any manner answerable for the loss incurred; this leads us to consider the first ground of defense taken by the appellee.

On the day before this policy was underwritten, Whiting, the owner, obtained insurance, on the same vessel, from the Sun Mutual Insurance Company, to the amount of $7300, and, on the day following, another insurance from the Commercial Insurance Company, to the amount of $7300. The vessel was valued at the same sum in each policy, and each was for the same period of time, and covering the same risks. Each of the policies contained the following clause: "Provided always, and it is further agreed, that if the said assured shall have made any other insurance upon the premises aforesaid, prior in date to this policy, *then this insurance company* shall be answerable only for so much of the amount as such prior insurance may be deficient towards fully covering the premises hereby insured, without any deduction for the insolvency of all or any of the underwriters, and this insurance

company shall return the premium upon so much of the sum by them insured, as they shall be by such prior insurance exonerated from. And in case of any insurance upon the said premises, subsequent in date to this policy, this company shall, nevertheless, be answerable for the full extent of the sum by them 'subscribed hereto, without right to claim contribution from such such subsequent assurers, and shall accordingly be entitled to retain the premium by them received, in the same manner as if no such subsequent assurance had been made."

It has been argued, on behalf of the appellee, that the effect of this clause is to make the first underwriter responsible for the whole loss, where it does not exceed the amount underwritten in the first policy, and in such case to exempt subsequent underwriters from all liability for contribution. In support of this construction the case of *The American Ins. Co. vs. Griswold,* decided by the Supreme Court of New York, and afterwards affirmed by the Court of Errors, 14 *Wend.,* 399, has been cited and much relied upon. In that case, the construction of a clause similar to the one before us, was most ably and elaborately discussed and considered, and although in the opinion delivered by Chief Justice Savage, some sanction may be found for the position taken by the appellee, yet a careful examination of that case, and a mature consideration of the question, has confirmed us in the opinion, that the interpretation of the clause contended for by the appellee, cannot be supported upon any sound principles of construction. This proviso was first introduced into marine policies in the United States, and is generally called, "The American clause." It is unnecessary to enter into any particular examination of the origin and purpose of its adoption. It has been said that it was intended to restore the ancient rule of construction governing cases of double or over insurance, which had been disturbed by the decision of Lord Mansfield in *Newby vs. Reed,* 1 *W. Black. Rep.,* 416. That decision was followed in the case of *Thurston vs. Koch,* decided in 1800 by the Circuit Court of the United States, for the district of Penn-

sylvania, 4 *Dall.*, 348. This last decision, it is said, led to the adoption of the American clause in marine policies. 5 *Sergt. & Rawle*, 481. 14 *Wend.*, 461, 482, 497. It may be conceded, however, that the purpose for which the clause was introduced, although it may afford some aid in arriving at its meaning, cannot control the construction of its language. As it was said by Chief Justice Savage, in 14 *Wend.*, 473: "It is well settled that a policy of insurance is to be construed by its terms, in the same manner as any other written instrument; and if the fair and evident meaning of the language used, be to extend to all cases of prior and subsequent insurance, I know not what power the court has to limit the operation of the contract to double insurances only." Adopting this method of construction, and looking at the words of the clause, we have had no difficulty in arriving at their meaning, and are clearly of of opinion that they can apply only to cases of double insurance. In the first part of the clause the stipulation is, that if there be a prior insurance, the underwriter shall not be answerable on a subsequent policy except so far as the amount at risk may remain uncovered by the previous insurance; that is, if the prior policy is sufficient in amount to cover the whole value of the thing at risk, then the subsequent policy does not attach, the underwriter is at no risk, and the premium is to be returned. So far as the amount at risk remains uncovered by prior insurance, a subsequent policy does attach, and the second underwriter is *pro tanto* liable upon his policy, and entitled *pro tanto* to retain the premium. It will be observed, that the stipulation is not, that the underwriter is to be exempt from liability, if there has been prior insurance to an amount sufficient to cover the loss, but that he is not answerable at all upon his contract, unless there be something to which his policy can attach remaining uncovered by prior insurance. When we look at the latter part of the clause, which provides for the case of a subsequent insurance, the meaning of the whole is alike clear and free from difficulty.

In that, it is stipulated, that, in case of any subsequent insurance, the underwriter shall remain answerable for the

amount underwritten, "without right to claim contribution from such subsequent assurers, and shall, accordingly, be entitled to retain the premium received, *in the same manner as if no such subsequent assurance had been made.*" These last words, which we have italicised, qualify the whole sentence, and are a key to its construction.   If, in the case before us, there had been no policy on the ship except the first, (that of the Sun Mutual Insurance Company,) it is clearly settled, that the liability of that company would have been for only $\frac{7800}{22000}$ part of the loss. · The owner not having any other insurance, would stand as his own insurer, for that portion of the value of the ship remaining uncovered by the policy, and the loss, whether total or partial, would be apportioned between him and the underwriter.   This relation between the assurer and assured is not changed, when the latter obtains a subsequent assurance, thereby substituting another underwriter for himself, as to that portion of the thing at risk, which is not covered by the first policy.   According to the construction contended for by the appellee, the Sun Mutual Insurance Company, would be rendered liable for the whole loss, only in consequence of there being a subsequent assurance, which is directly in the face of the words of the contract, that it *"shall be answerable in the same manner as if no such subsequent assurance had been made."* On the construction of this clause, we concur in the views expressed by Senator Tracy, in his very able dissenting opinion, in 14 *Wendell*, 497 to 502; and also in the opinion on that subject, expressed by the Chancellor in the same case. 14 *Wend.*, 482, 483.

On page 482, he says: "If the object of the American clause was, to restore this ancient rule of apportionment between the underwriters in successive policies, as it originally existed in the mercantile law of England, as well as the rest of Europe, it was hardly possible to do it in more appropriate and explicit language, than is used in the last paragraph of this clause."

The conclusion, from what has been said, is, that in the case before us, the liability of the appellee, upon the policy sued

DECEMBER TERM, 1859    313

Whiting, use of Sun Mutual Ins. Co. vs. Independent Mutual Ins. Co.

on, is not in any manner affected by the clause we have been considering; and at the time this action was brought the appellant had, under the admitted facts in the cause, a clear right to recover in this suit, $\frac{7400}{12000}$ part of $2189.04, being that proportion of the loss, for which the appellee was answerable on its policy.

The remaining question for us to consider, is whether any thing which has since occurred has operated to discharge the appellee from liability on its contract? We have seen that by the true construction of this policy, so soon as the loss occurred, the liability of the appellee to pay its just proportion of that loss was fixed; it became a debt due to Whiting, which like any other *chose in action* might be sued for and recovered, or assigned. As was said by Chief Justice Shaw, in the case of *Wilson vs. Hill*, 3 *Metcalf*, 69, after deciding that the transfer of the title to property insured against fire, did not confer upon the assignee any right to recover the insurance money: "These considerations, said he, however, do not apply to a case where the assured, after a loss, assigns his right to recover that loss; it would stand on the same footing as the assignment of a debt, or right to recover a sum of money actually due, which like the assignment of any other *chose in action*, would give the assignee an equitable interest, and a right to recover in the name of the assignor, subject to set-off and all other equities."

Such was the nature of the debt due by the appellee to Whiting, at the time this suit was instituted. It is not pretended that the appellee has paid any part of it; no acquittance or discharge has ever been given to it; but it is contended that the money which the appellee owed, was paid to Whiting by the Sun Mutual Insurance Company, and the appellee claims the benefit of that payment, although this case has been transferred to the Sun Mutual Insurance Company, and this suit is prosecuted for its benefit. In the consideration of the questions arising upon this branch of the case, it must be borne in mind that the several underwriters are strangers to each other; there is no privity whatever between them; each is liable upon its separate contract, for its just proportion of

the loss, according to the amount underwritten in its own policy, and there would seem to be manifest injustice in allowing any one to escape from the payment of its own just debt, in consequence of another debtor, who is an entire stranger, having paid to the creditor more than he was justly entitled to claim, and the injustice becomes the more manifest, where, as in this case, the claim is assigned by the creditor to the use of the party who has thus overpaid his indebtment, and the suit is prosecuted for his benefit.    In the case of *Merryman vs. The State, at the instance of Harris, use of Murray,* 5 *H. & J.,* 423, Murray, who was not Merryman's surety, paid to Harris a debt of $162.36, which was in fact due from Merryman, and not, as Murray erroneously supposed, due from him.   A suit was instituted in the name of Harris, for the use of Murray, to recover the amount from Merryman.   The defense was urged that Harris' debt had been paid and satisfied.    Judge Earle, in delivering the opinion of the court, (page 426,) says:

"If the payment of this $162.36, is at all to be considered as payment for Merryman, it is manifest Murray was not liable to pay it for him, and not having paid it at Merryman's instance, it presents the case of a stranger paying the debt of another, without his consent or knowledge.   Such a payment does not necessarily discharge the debtor, and cannot be taken advantage of by him, without showing, by an acquittance or other means, that it was intended by the payer and receiver to operate a discharge.   And, we think, there is great reason in this, for an action for money paid, laid out and expended, cannot be sustained by a stranger against a debtor, whose debt he has paid voluntarily and without directions, and, therefore, he (the debtor) shall not avail himself of such payment in a suit by his creditor, unless he can show an express intention to extinguish the debt.   This is not the case before us.   The payment was made by Murray to Harris voluntarily, and without the knowledge of Merryman, and certainly without any intention in Harris to discharge the debt of Merryman."   This language has been cited as expressing what we believe to be sound law, as it is plain jus-

tice, and strictly applicable to the case before us.    In the particular case of *Merryman vs. The State*, the adjudication did not rest entirely upon the ground stated in the paragraph which we have quoted.    In that case the payment by Murray had been made through a mistake of fact, and therefore he had a legal claim against Harris to recover it back.    This circumstance would have aggravated the injustice of construing the payment by Murray to be a discharge of Merryman; but it is difficult to perceive how the legal obligation of Merryman could in any manner be affected by the legal rights existing between Harris and Murray, who was a stranger to him. It is clear to us that whether the payment by Murray to Harris had been through mistake of fact or mistake of law, whether he would have had a legal right to recover it back from Harris or not, Merryman would equally have been liable for his debt.    This depended, not upon the legal rights between Harris and Murray, but upon whether the money was paid by Murray, and received by Harris, with the intention of discharging Merryman's debt.    Now, in this case, there is no pretence that the money paid by the Sun Mutual Insurance Company to Whiting, was paid for the purpose of satisfying and discharging the debt due by the appellee.    This suit, which was then pending, remained upon the docket, and was entered to the use of the Sun Mutual Insurance Company, which is equitably entitled to be protected in its prosecution.    See, 1 *Wheaton's Rep.*, 233.  13 *Johns. Rep.*, 353.  2 *G. & J.*, 344, 353.  The payment of the premium by Whiting to the appellee, made after the satisfaction of the judgment against the Sun Mutual Insurance Company, which has been relied on by the appellee's counsel as showing that the appellee was no longer held responsible on its policy, would rather evince the contrary, because, upon the construction of the policy, which would exonerate the appellee from responsibility, the assured would be entitled to a return of the premium.

We have treated this question as if the amount, claimed in this suit, were an ordinary debt due from the appellee on contract.    But it has been earnestly insisted, in argument,

that being a contract of insurance, it stands upon entirely different grounds; and although, if it were an ordinary debt, the appellee might remain liable, yet being a contract of indemnity, no action will lie upon it after the loss has been paid to the assured, no matter by whom or from what source. When it is said that a marine or fire insurance is a contract of indemnity, we understand the meaning to be, that in order to support it, there must be an insurable interest; the assured must have some interest in the thing insured which is at risk, and liable to be injured; and that there can be no action maintained upon the policy unless there has been some loss incurred.

In the case of *Godsall, and others, vs. Boldero,* 9 *East.,* 72, which was on a policy of insurance upon the life of William Pitt, obtained by the plaintiffs, who were his creditors, it appeared, that, after the death of Mr. Pitt, an appropriation was made by Parliament for the purpose of paying his debts, and out of the money thus appropriated his executors paid the debt due the plaintiffs. The court in deciding the case treated the insurance as a contract of indemnity; the insurable interest of the plaintiffs was the debt due them by Mr. Pitt, and to secure them against the loss of that, the policy was executed; before the action was brought upon the policy, the debt had been paid; so that, in point of fact, no loss or damnification had been suffered by the plaintiffs, and it was held that they could not recover upon the policy. See Lord Ellenborough's decision, page 81. See, also, the observations on the case of *Godsall vs. Boldero,* made by the Vice-Chancellor, Sir Thomas Plumer, in *Ex-parte Andrews, in re, Emett,* 1 *Madd.,* 573, and 2 *Smith's Leading Cases,* (*American Edition of* 1855,) pages 303 and 304. In subsequent cases overruling the decision of *Godsall vs. Boldero,* it has been repeatedly said, that the only error consisted in applying to a case of life insurance the principles which are applicable to marine or fire insurance.

In the case of *Hamilton vs. Mendes,* 2 *Burr.,* 1210, upon which the decision of Lord Ellenborough, in *Godsall vs. Boldero,* was based, Lord Mansfield made use of language

which has been cited by the appellee and relied upon as sustaining his view in this case. *Hamilton vs. Mendes* was an action on a marine policy upon a ship and cargo, which had been captured, and was afterwards recaptured; the ship and cargo arrived safely and uninjured at the port of destination; but the assured attempted to abandon and brought his action on the policy. It was held that the assured had no right to abandon, after the peril was over and the thing in safety, and no damage having been suffered the action would not lie. It was with reference to that case, that the language of Lord Mansfield, cited by the appellee's counsel, was used, and we need not say that the case of *Godsall vs. Boldero*, and that of *Hamilton vs. Mendes*, were wholly unlike the case before us. Here the loss has actually occurred. Upon the happening of the loss the responsibility of the appellee was fixed. The proportion due upon its policy became, according to the language of Chief Justice Shaw, in 3 *Metcalf*, before cited, a debt due from the appellee, like any other debt or *chose in action*, which has not been paid or discharged by the appellee or by any one for it.

Each of the insurance companies was bound, on its separate contract, to indemnify the insured for a certain portion or fractional part of his loss. They were not co-sureties, neither was legally bound to pay the whole, with the right of then calling on the others, for their respective proportions; and as the appellee is not legally liable over to the Sun Mutual Insurance Company for contribution, it (the appellee) cannot claim the benefit of the overpayment made by that company, which was not made on behalf of the appellee, or for the purpose of discharging its debt, but solely for the purpose of paying the debt which the other underwriter supposed it owed to the assured.

In support of the view here expressed, we refer to the case of *Lucas vs. Jeff. Ins. Co.*, 6 *Cowen*, 635, which is an express adjudication upon this point. The question also arose in the *American Ins. Co. vs. Griswold*, 14 *Wend.*, 399. See the statement of the case, 400, 401, 402, 403, and the argument of counsel, 427 and 457. Whatever difference of opinion

318                    MARYLAND REPORTS.

Whiting, use of Sun Mutual Ins. Co. *vs.* Independent Mutual Ins. Co.

there was upon other points involved in that case, on this question there was no dissent, either in the Supreme Court or the Court of Errors. On page 483, the Chancellor said: "If either of the subsequent underwriters have paid to the assured upon a compromise of the claims made upon them, more than they were legally bound to pay under their contracts, that is a matter with which the underwriters, in the first policy, have no concern; since they are not bound to refund any thing to the subsequent underwriters, and never had any claim upon them for contribution. If the assured have received any thing, under such a compromise, which they cannot conscientiously retain, they should restore it to those from whom it has been received; but the American Insurance Company, or its stockholders, have no equitable right to insist that it shall be allowed to them in discharge of their legal liability under the first policy."

Believing these views to be correct, we are of opinion, that under the facts and circumstances of this case, the payment made to Whiting, by the Sun Mutual Insurance Company does not enure to the benefit of the appellee, and is no bar to a recovery in this action. One other ground of defense has been taken by the appellee. It is argued that the judgment rendered against the Sun Mutual Insurance Company was an adjudication by a court of competent jurisdiction, which conclusively settled the liability of that company, upon its policy, for the whole loss; and is a bar to this suit. This ground of defense, like that which we have just considered, is purely technical, and if it be sustained, would defeat the plain justice of the case. This consideration, however, while it may invite us to scrutinize the argument more closely, cannot be allowed to control our judgment, so as to lead us to disregard the principles of the law which are applicable to the subject; if they are found to support the appellee's position, the defense must prevail, however technical it may be. We think, however, that this ground of defense is more ingenious than solid; and in this case, as in most others growing out of commercial contracts, it will be found that the rules of the law are consistent with the principles of justice.

DECEMBER TERM, 1859.  319

Whiting, use of Sun Mutual Ins. Co. vs. Independent Mutual Ins. Co.

No authority has been cited which sanctions the proposition, that the judgment rendered in the case of *Whiting vs. The Sun Mutual Ins. Co.*, can in any manner affect the rights or liabilities of the appellee in this action; the appellee was no party to that suit; it was *res inter alios*, and the adjudication therein, could neither bind nor discharge the appellee. *Inter partes*, such a judgment is an estoppel; but it cannot operate upon strangers. To illustrate this, let us suppose that by the true construction of these several policies of insurance, the Sun Mutual Insurance Company had been legally responsible for the whole loss, and the appellee not liable for any part of it; and, in the suit against the former company, it had been erroneously adjudged that it was answerable for only a part, could it be for a moment maintained, that in a suit against the appellee, the judgment in the former case could be invoked as a judicial determination upon the construction of the policies, which would bind the appellee? Such a proposition would not be tolerated for a moment, and yet the defense here rests upon a proposition which is the same in principle. There is no doubt, that the judgment against the Sun Mutual Insurance Company, was a conclusive settlement of the rights between it and Whiting, whether that judgment was obtained upon a trial and verdict, or entered by voluntary confession. The defendant in that suit was thereafter conclusively bound to pay the amount of the judgment; and when paid would have no legal right to recover back any part of the money, no matter how erroneous the judgment might be. But its position in that respect would have been in no wise different if it had paid the whole of the money voluntarily, without suit, under a mistake of law; and yet, as we have before said, such a payment would not enure to the benefit of the appellee, which is a stranger to the transaction. In either case, the money so paid, beyond the amount due, ought, in conscience, to be returned; the appellee has surely no right to insist that it shall be retained, so that it may be exonerated from the payment of its own debt. It follows from what has been said, that, in our opinion, none of the grounds of defense to this action

can be sustained, and that upon the whole case, as presented on the statement of facts, the appellant is entitled to recover.

Believing that the court below erred in refusing the plaintiff's prayer, and in the instruction given to the jury, the judgment must be reversed.

*Judgment reversed and procedendo ordered.*
(Decided May 9th, 1860.)


ECCLESTON, J., delivered the following separate, and, in part, dissenting opinion.

This is an action of *assumpsit*, instituted by James Whiting against the appellees, in the Superior Court of Baltimore city, in May 1855.

A declaration and the plea thereto being filed, the counsel agreed that all objections to the form of action and errors in pleading should be waived, and that either party should be at liberty to give in evidence any matter which might be admissible under any form of action or issue.

James Whiting, the owner of the barque "A. A. Drebert," on the 15th of March 1854, obtained a policy of insurance upon the vessel, from the Sun Mutual Insurance Company, in which the vessel was valued at $22,000, and insured to the extent of $7,300. On the 16th of the same month, he obtained a policy from the *Independent Mutual Insurance Company*, valuing the vessel at the same amount, and insuring her to the extent of $7,400; and, on the next day, he obtained a third policy from the Commercial Mutual Insurance Company, valuing the vessel at the same sum, and insuring her to the extent of $7,300; the policies making a total insurance of $22,000, that being the valuation of the vessel. The same period of time, and the like risks, were covered by each policy.

In that executed by the defendant in this suit, is contained the following clause: "Provided always, and it is further agreed, that if the said assured shall have made any other assurance upon the premises aforesaid, prior in date to this policy, then the said The Independent Mutual Insurance

Company shall be answerable only for so much of the amount as such prior insurance may be deficient towards fully covering the premises hereby insured, without any deduction for the insolvency of all or any of the underwriters, and the said, the Independent Mutual Insurance Company, shall return the premium upon so much of the sum by them insured, as they shall be, by such prior insurance, exonerated from. And in case of any insurance upon the said premises, subsequent in date to this policy, the said the Independent Mutual Insurance Company, shall, nevertheless, be answerable for the full extent of the sum subscribed hereto, without right to claim contribution from such subsequent assurers, and shall accordingly be entitled to retain the premium by them received, in the same manner as if no such subsequent assurance had been made."

The execution of the three policies was admitted, and they were read in evidence at the trial.

It was admitted that the vessel sailed on the voyage indicated in the policies, and that she was injured to the amount of $2189.04, (after deducting new for old;) that three suits, of which this is one, were respectively brought against said companies for this amount; and that judgment was given in favor of the plaintiff, Whiting, against the Sun Mutual Insurance Company, for the above amount, on the 4th of December 1855, with costs; that the said judgment was satisfied and paid in full by the said Sun Mutual Insurance Company; that, during the trial of the case, no question of the proportionate or *pro rata* liabilities of said company was raised by it or its attorney.

The registry and American ownership of the vessel were admitted. And it was agreed that the facts admitted should be given in evidence in the case of the Sun Mutual Insurance Company against the Independent Mutual Insurance Company, then pending in the Superior Court for Baltimore city.

It was agreed that the premium, which was the consideration for the insurance made as above stated, by the Independent Mutual Insurance Company, was paid to the said com-

41     v.15

pany, by Whiting, on the satisfaction of the judgment afore-
said by the Sun Mutual Insurance Company; and that the
injury sustained, as above stated, was by perils insured
against.

The defendant asked two prayers, and the plaintiff one.
Whilst the prayers were being discussed, and before the court
had given any decision thereon, the plaintiff's counsel made
an offer to the defendant's counsel, which the latter refused
to entertain. The offer was as follows:

"The Sun Mutual Insurance Company offers to the defend-
ant to enter the case off, and to release the defendant, if the
said defendant will give judgment for $\frac{7400}{2200}$ of \$2189.04,
in the case *now* (then) *pending* in this court, by the said *Sun
Mutual Insurance Company against the said defendant*, or
that, if judgment be confessed for the same amount in this
case, that the said Sun Mutual Insurance Company will
enter the said case against the defendant off, and release the
defendant."

The court then rejected the plaintiff's prayer, and, without
passing on the defendant's prayers, instructed the jury that,
upon the facts stated in the admission of facts, their verdict
must be for the defendant. To which ruling of the court the
plaintiff excepted.

The verdict and judgment being in favor of the defendant,
the plaintiff appealed.

The suit in this case was instituted in the name of James
Whiting, the assured. The use of the Sun Mutual Insur-
ance Company, it was conceded in argument, was entered
after Whiting had received payment and satisfaction for his
judgment against the Sun Mutual Insurance Company.
And there is no evidence tending to show that the payment
of that judgment was made with any understanding, agree-
ment or expectation, that the present suit should be transferred
to, assigned or entered, for the use of the Sun Mutual Insur-
ance Company.

The appellant's counsel have contended—and, I think,
correctly so—that the three policies did not insure the same
*interest* in the vessel, but that each policy was upon a sepa-

rate interest or portion in the vessel; that, at the commencement of the risk, there was sufficient aliment for each policy, and that each then attached.

On the part of the appellant it has also been insisted, that from the language of the American clause, as well as from the motives or circumstances which induced its adoption, it must be understood as designed to apply, only to cases of double or over assurance; and that the present case is neither the one nor the other.

According to the ancient English rule, prior to the year 1763, if there were several policies of different dates, constituting a case of double insurance, the second policy only attaches upon or covers so much of the insurable interest as the prior policy did not cover; the second underwriter being only entitled to retain the premium *pro tanto*, where the commencement and termination of the risks and the perils insured against were the same.

In *Newby vs. Reed*, 1 *Wm. Bl.*, 416, decided in 1763, it was held by Lord Mansfield, that in case of a double insurance, although the insured was not entitled to two satisfactions, yet he might recover the whole against either of the insurers, and leave him to recover a ratable satisfaction from the other insurers. This decision has been frequently spoken of as having introduced a new rule. It was adopted in *Thurston vs. Koch*, 4 *Dallas*, 348. This latter decision seems to have been considered by Mr. Justice Gibson, in *Peters vs. Delaware Ins. Co.*, 5 *Sergt. & Rawle*, 481, as having occasioned the introduction of the American clause; which view is to be found repeated in several of the elaborate opinions given in the much contested and ably considered case of *American Ins. Co. vs. Griswold*, 14 *Wend.*, 464, 473, 497. There the operation and effect of the clause was very fully considered; and the authorities bearing on the subject were examined with much care and ability. It is there, as elsewhere, said, the object of introducing the clause was to restore the ancient English rule, as it existed before the decision in *Newby vs. Reed*. In addition to the above pages in 14 *Wend.*, see *Brown vs. Hartford Ins. Co.*, 3 *Day*, 67.

The decision of the Supreme Court of New York, announced by Chief Justice Savage, in the case of *American Ins. Co. vs. Griswold*, was affirmed in the Court of Errors; Chancellor Walworth and twenty Senators uniting in the affirmance, Senators Tracey and Jones dissenting.

In that case, there were goods shipped on a trading voyage, insured in three policies on time. The value of the cargo exceeded the whole amount insured in the three policies. At the first port where the vessel stopped to trade, a portion of the cargo was landed in safety; the residue of the cargo, equal in value to the sum subscribed in the first policy, was totally lost by one of the perils insured against. Each policy contained the American clause, and under that the first assurer was held responsible for the whole sum subscribed in the first policy, without any right to claim contribution from the subsequent assurers. The dissenting opinion of Mr. Senator Tracy held that the American clause in a policy, applies only to cases of *double assurance;* that is, where the insufficiency in value to give aliment to the several policies exists at the time of executing the policy, and not when it is superinduced by the withdrawal of a part of the subject at risk, after the policies have all attached, and the risk in respect to each commenced.

Mr. Phillips and Mr. Parsons seem disposed to adopt the reasoning of Senator Tracy, as having given the correct interpretation of the American clause. 2 *Phil. on Ins.*, *sec.* 1261. 2 *Parsons' Maritime Law,* 97, 98, and *note* 1.

After careful investigation of the subject, I think the circumstances under which the American clause was first introduced, and the proper interpretation of the language employed therein, justify the conclusion that the clause is not applicable where there is no double or over assurance when the risk commences.

In the present instance, there was aliment sufficient to feed all the policies, at the commencement of the risk, consequently there was no double or over assurance; and therefore the clause can have no effect in this case.

In this conclusion, my brothers and myself concur. The residue of this opinion contains my separate views.

The next question for consideration is, whether the appellant is entitled to a reversal of the judgment appealed from, if the policies are to be construed as though the American clause had not been inserted?

Under such a construction of the policies, each company would have been answerable, only, for its ratable proportion of the loss. No one of them would have been bound to pay the whole, the one so paying the whole or more than its share, by compulsion, having the right to demand contribution from the others. They stood in no such relation to each other as co-sureties do; but each separately and independently liable for its ratable proportion of the loss, and no more. The Sun Mutual Insurance Company, therefore, was responsible, on account of the loss, for only $\frac{730}{2000}$ of \$2189.04, and had a valid legal defence, which might have been successfully urged against any larger demand, if such a defence had been properly presented in due time, in the suit against that company by the assured.

A similar defence would have been equally available, if the two subsequent policies had not been made, for then, in the language of the books, the assured would have stood his own insurer, to the extent of his interest in the vessel uninsured by the first policy. The defence, however, was not made, and the judgment was permitted to be given against the Sun Mutual Insurance Company for the whole loss. This, I take it for granted, resulted from a belief that the American clause rendered that company liable for the whole sum. If then there was a mistake in permitting such a judgment and paying it in full, it was a mistake of law and not of fact.

Supposing that after the judgment had been thus rendered, instead of paying it, the defendant therein had filed a bill in equity to obtain relief, by having the same reduced to the correct proportion of the loss for which the policy was legally liable; such relief could not have been granted; because, there was a legal defence which might have been availed of, but was not attempted to be made.

I do not understand the counsel for the Sun Mutual Insurance Company as having contended, that this company had any right of action to recover from the assured any portion of the money paid him, in satisfaction of the judgment. They insist, however, that the payment was not designed to pay or to satisfy the debt or portion of the loss due from the Independent Mutual Insurance Company, the defendant in this suit; but that the claim of the assured against this defendant was not extinguished by the said payment; and that there was an equitable consideration, arising from the payment by mistake, sufficient to sustain an equitable assignment of this suit from Whiting to the Sun Mutual Insurance Company; and therefore the use, for that purpose, was properly entered, and the suit should have been sustained.

But, in reply to these views, it is said a marine insurance is a contract of indemnity; and whenever the loss or damage sustained is paid in full, or made good, *even aliunde*, there is an end of the damnification, and the insurer is no longer liable.

In *Godsall vs. Boldero*, 9 *East.*, 72, the plaintiffs, as creditors of Mr. Pitt, insured his life, for the purpose of securing their debt. After his death this debt was paid by his executors, out of a sum of money granted by Parliament for that purpose. A suit being instituted upon the policy to recover the amount of the insurance, the Court of King's Bench decided adversely to the plaintiffs. The judgment of the court, as delivered by Lord Ellenborough, maintained the doctrine that the life policy was a contract of indemnity, and the debt of Mr. Pitt having been paid by his executors, the insurers were no longer responsible.

This decision, after being repeatedly quoted and followed, and sometimes its correctness doubted, was overruled in 1854, in the Exchequer Chamber, in the case of *Dalby vs. The India and London Life Assurance Co.*, 80 *Eng. Com. Law Rep.*, 365, and same case in 28 *Eng. Law & Eq. Rep.*, 312. It will be seen, however, that the reason assigned for overruling the decision of Lord Ellenborough is, that he committed an error in considering a life-policy to be a contract of indem-

nity.    After speaking of his lordship's reliance upon the de-
cision of Lord Mansfield in *Hamilton vs. Mendes*, as show·
ing that the plaintiff's demand was for an indemnity only;
Baron Parke then says: "Lord Mansfield was speaking of a
policy against marine risks, which is in its terms a contract
of indemnity only." Again the Baron speaks of being quite
satisfied, that the case of *Godsall vs. Boldero* was founded
on a mistaken analogy; alluding, of course, to a mistake in
considering a life-policy a contract of indemnity in analogy
to a marine policy.

In the more recent case of *Low vs. The London Indispu-
table Life-Policy Company and Robertson*, 1 *Jurist*, 178, *N.
S.*, (*Part* 1,) the decision of the Exchequer Chamber,
overruling *Godsall vs. Boldero*, is referred to as placing *life-
policies* on a right footing. Vice-Chancellor Wood then says:
"Policies on fire and on marine risks are policies expressly, in
the very words of the policies, made to recompense a loss
which the parties may sustain in consequence of the calami-
ties against which the policies are effected; therefore, when
that loss is made good *aliunde*, the company are not liable
in any way, under the express terms of their contract, in re-
spect of that which has not accrued, viz., loss; but when the
question comes to be a question on a life-policy, there is no
such contract in the policy itself. The policy never refers to
the cause or reason for affecting the assignment." Again, he
says: "They" (the company) "have founded their calcula-
tion upon the probability of duration of human life, and they
get paid the full value of that calculation. On what princi-
ple can it afterwards be said, that because somebody else is
good enough to satisfy the object which the insured had in
view when he effected the assurance, the insurer should be
released from the contract?"

An examination of the authorities will clearly show, that if
the principle announced in *Godsall vs. Boldero* had been
applied to a fire or marine insurance, the decision would not
have been held erroneous.    The error consisted in holding a
life-policy to be a contract of indemnity, in analogy to a fire
or marine policy.

*Merryman vs. The State*, 5 *H. & J.*, 423, has been referred to by the appellant's counsel, as having an important bearing on the present controversy. But, in that case, no contract of indemnity was involved.

The payment of the money by Murray, on which the action was sustained, was a payment made by him under a mistake of fact, and not of law.

In the opinion of the court, they refer to prior decisions of their own, based upon the principle that a payment by a security will operate as an assignment of the debt against the principal, so as to enable him to sue, or execute for it, in the name of the creditor, for his use. After citing *Sotheren vs. Reed* as one of the cases of this description, that is shown to be where a surety in a testamentary bond, having paid the creditor his money, and satisfaction of record being entered on the judgment against the surety, he was deemed equitably entitled to the judgment against his principal. And then the opinion concludes thus: "Under all the circumstances of this case, we are of opinion that it is within the principles of our former decisions, and we therefore affirm the judgment."

In the case before us, there *is* a contract of indemnity. If there was a mistake in paying the loss, it was a mistake of law, and not of fact. And there is no relation of principal and surety, or of co-sureties between any of the parties connected in any way with the matter in dispute. This case is therefore essentially different from that of *Merryman vs. The State*.

*Williamson vs. Allen et al., use of Riston*, 2 *G. & J.*, 344, is a suit upon a promissory note drawn by Williamson in favor of Wilson, Williamson & Co., and by them endorsed to S. & M. Allen & Co. The note not being paid at maturity, suit was instituted by the endorsees. Riston had promised to pay the note if not paid by the maker or endorsers. After the institution of the suit, and before the trial, he paid the plaintiffs the amount of the claim. The amount so paid was in different sums, at different times. When the last payment was made, the plaintiffs gave Riston a receipt, stating the different sums, and concluding: "which *is* in full of

a note, held by us against D. Williamson, for $2500, which note is now in suit, and the proceeds of the same properly belonging to said Riston." A few days before the trial, the suit was entered for Riston's use.

The defence set up was, that the indorsees had been paid and satisfied the full amount of the note, which was thereby extinguished, and therefore the suit could not be prosecuted to judgment, in the name of the indorsees, for the use of Riston, to recover the money for which the note had been given. Prayers to that effect were submitted to the court below, on the part of the defendant. The court refused to grant them, "being of opinion that the defendant had adduced no evidence to show that any payment had been made to the plaintiffs by the defendant, or by his agent; but that the sum received by the plaintiffs from Riston must be considered as a consideration paid by him to the plaintiffs for an equitable assignment of the plaintiffs' legal interest in the cause of action."

The decision was affirmed, and, evidently, upon the ground that it was shown by the receipt and the other evidence in the cause, that Riston had not paid the claim on the defendant's account, or as his agent, with a view to discharge the note, but with the intention to acquire the beneficial interest himself.

It has been admitted in the present case, that the Sun Mutual Insurance Company *paid and satisfied in full* the judgment rendered against it; which was for the whole loss of the assured. And I have seen nothing in this record to show that the said company, before or at the time of the payment, had any expectation or design of obtaining, by reason of such payment, any equitable assignment of, or beneficial interest in, the present suit; or that said Company had any other design or intention than to satisfy and extinguish Whiting's entire claim for his loss.

In the consideration of this case, it should be borne in mind, that the judgment against the Sun Mutual Insurance Company, was in a court of competent jurisdiction, which judgment ascertained the liability of that Company, under

42            v. 15

its policy, to be the whole amount of the loss sustained by the assured.

It appears that the judgment against the Sun Mutual Insurance Company for the whole amount of the loss, must have been paid after the institution of this suit and before the trial.

Entertaining the views which have been expressed in this opinion, I deem it needless to inquire whether there was or was not error in the refusal of the prayer submitted by the plaintiff, or in the instruction given by the court. If the ruling of the court was erroneous in any respect, it could only have been so, in my opinion, because the plaintiff had a right to nominal damages, inasmuch as the payment of the loss to the assured by the Sun Mutual Insurance Company was made after the commencement of this suit. If, however, on that account there ought to be a reversal of the judgment, still I think there should be no *procedendo*, for the reason that the plaintiff is not *now* entitled to recover the money claimed *Rawlings vs. Adams, 7 Md. Rep.,* 54.