JUNE 1822.

Merryman
vs
The State

## COURT OF APPEALS, JUNE TERM, 1822.

MERRYMAN, *et al. vs.* THE STATE at the inst. of HARRIS;

### use of MURRAY.

APPEAL from *Baltimore* county court. Debt brought on the 4th of May 1818, in the name of the State, at the instance of *T. Harris*, and for the use of *J. Murray*, on the bond executed on the 23d of November 1811, by *William Merryman*, as sheriff of *Baltimore* county, with *Caleb* and *John Merryman* as his sureties. The bond was in due form, and was approved by the orphans court of the county on the day of its date. The defendants below, (now appellants,) pleaded *general performance*, to which the plaintiff, protesting a *nonperformance*, replied, that in March 1811, the state, at the instance and for the use of *T. Harris*, administrator of *J. Gwinn*, (being the *T. Harris* at whose instance this suit was brought,) recovered a judgment against *T. Bailey* for the sum of £10,000 current money debt, and $7 60 costs, to be released on payment of £897 6 10, with interest from the 18th of December 1807, and costs. That upon this judgment a writ of *fieri facias* issued on the 2d of November 1811, and was directed to, and delivered to said *W. Merryman*, he then being sheriff of said county, to be executed, who laid said writ on certain real property of said *Bailey*, and returned said writ to court, endorsed, that the property remained in his hands unsold for want of buyers. That on the 18th of July 1812, a writ of *venditioni exponas* issued, also directed

H having a judgment against and M his surety, sues process thereon, the sheriff makes the amount of the judgment, but only pays a part of it to H, and the balance is paid H by M the surety, they (H & M) not knowing that there were funds in the hands of the sheriff—*Held,* that M's payment does not discharge the sheriff, but that the sheriff's claim against the same operates as an equitable assignment of such claim to M, for which he may sue the sheriff's bond. The act of limitations, if relied on, must be pleaded, (note.)

to said *W. Merryman,* then being sheriff as aforesaid, commanding him to sell said property, &c. to satisfy said debt and costs. On the 16th of September 1812, in pursuance of this last writ, he sold the property to *J. Murray* and *J. Stevenson,* for $1280, and received the purchase money. *Breach,* nonpayment to *Harris* of the money so levied, made and received, &c.

The following case was agreed upon—*W. Merryman,* as sheriff of *Baltimore* county, executed his sheriff's bond, with *C.* and *J. Merryman* his sureties, on the 23d of November 1811, in the form prescribed by law. It was approved on the same day by the orphans court of *Baltimore* county. A writ of *venditioni exponas* was issued on the 18th of July 1812, directed to said *W. Merryman,* sheriff of *Baltimore* county, reciting a judgment recovered in the county court of said county, in March 1811, by the state, against *T. Bailey,* for, &c. That a *fieri facias* issued thereon on the 2d of November 1811, and was returned by said sheriff, laid on certain property in his hands unsold, &c. The said sheriff was therefore commanded to expose to sale the said property, &c. to satisfy the said judgment, &c. He proceeded under this writ, and sold the property to the amount of $1280, on the 16th of September 1812, and received the purchase money, of which he paid to *Harris* $1087 52, which, with the sheriff's commission being deducted, left in the hands of said *Merryman* $162 36, part of the money received by him on the sale of the property aforesaid. *J. Murray,* being one of the sureties of *Bailey,* against whom, as then late sheriff of *Baltimore* county, the judgment mentioned in said writ of *venditioni exponas* had been recovered; and being liable as surety of said *Bailey* for said judgment debt, paid to *Harris* the balance thereof that remained due, after he *(Harris)* had received from *Merryman* the $1087 52 aforesaid. This balance paid by *Murray* exceeded the sum of $162 36, remaining as above stated in *Merryman's* hands. At the time *Murray* made the payment to *Harris,* neither he nor *Harris* knew that there was any money, on account of said judgment, in *Merryman's* hands. To recover the said sum of $162 36, remaining in *Merryman's* possession, this suit was brought. The county court gave judgment, on this statement of facts, for the plaintiff, and the defendants appealed to this court.

The cause was argued before BUCHANAN, EARLE, MAR-TIN, and STEPHEN, J.

*Williams,* for the appellants, contended, 1. That this suit having been brought more than five years after the date of the bond, was barred by limitations.

2. That the bond does not appear to have been recorded in the county court, or court of appeals, and was therefore null and void.

3. That the case stated does not correspond with the replication, the replication stating that the original judgment was recovered in favour of the state, for the use of *Harris,* administrator of *Gwinn,* and the case stated not showing that this suit was prosecuted at the instance of any person.

4. That the *fieri facias* and *venditioni exponas* set forth in the replication, were different from those recited in the statements.

5. That the money stated to be in *Merryman's* hands cannot be recovered in an action on his official bond, but must be by an action for money had and received.

6. That *Harris* cannot sustain this action, because, by the statement of the case, the whole of his judgment was paid and satisfied before the suit was brought.

On the *first point,* he referred to the dates of the bond and the writ, and insisted that limitation was a bar to the action, although not pleaded. He relied on the act of July 1729, *ch.* '25, *s.* 3, and *Draper vs. Glassop,* 1 Ld. *Raym.* 153, *(a.)* On the *second point,* he referred to the act of 1794, *ch.* 54, *s.* 8. On the *sixth point* he contended, that the money levied under the *venditioni exponas,* was to be paid to the plaintiff in that action, and if he was satisfied with less than the sum made, the residue was to be paid to the defendant. If the plaintiff had not been satisfied the amount levied, then he could enforce payment by attachment, &c. *Harris's* debt being paid, the surety who paid part of it, could not, in this form of action, recover the amount so paid. The surplus made under the *venditioni exponas* not paid to *Harris,* remained in the hands of the sheriff for the benefit of *Bailey.* He cited *Morgan's Lessee vs. Davis,* 2 *Harr.* & *M'Hen.* 9, 16.

*(a.)* BUCHANAN, J. This court, in *Maddox vs. The State* for the use of *Swinn,* at December term 1819, decided, that the act of limitations, if relied on, must be pleaded.

*R. Johnson*, for the appellee, cited *Welch vs. Mande-ville*, 1 *Wheat*. 233, and *Winch vs. Keeley*, 1 *T. R.* 622.

Earle, J. delivered the opinion of the court. When *Harris* had levied and sold on his *venditioni exponas* against *Bailey*, to the amount of $1280, *Bailey* and his securities were exonerated for so much, and for that sum the sheriff, *Merryman*, became liable to *Harris*. He paid him in part $1087 52, and after deducting commissions, there still remained in his hands $162 36 due to *Harris*. For this sum *Harris* had a good cause of action against *Merryman*, and if he had been so disposed might have sued him, and his securities, for it, on his sheriff's bond. Things being in this situation as between *Harris* and *Merryman*, *Murray*, one of the securities for *Bailey*, paid the whole balance due *Harris* on his judgment against *Bailey*, deducting the $1087 52, and overlooking the $162 36, still in *Merryman's* hands. *Murray* then paid *Harris* $162 36, under a mistake, and without being obliged as a security of *Bailey* to pay it; and what is to be the legal effect of the payment is the question. Does it extinguish *Harris's* demand on *Merryman*; and if it does not, shall it operate in equity an assignment thereof to *Murray*, so as to enable him to sue the sheriff's bond, and indorse the writ to his own use?

If the payment of this $162 36 is at all to be considered a payment for *Merryman*, it is manifest *Murray* was not liable to pay it for him; and not having paid it at *Merryman's* instance, it presents the case of a stranger paying the debt of another without his consent or knowledge. Such a payment does not necessarily discharge the debtor, and cannot be taken advantage of by him without showing, by an acquittance or other means, that it was intended by the payer and receiver to operate a discharge. And we think there is great reason in this, for an action for money paid, laid out and expended, cannot be sustained by a stranger against a debtor whose debt he has paid voluntarily and without directions, and therefore he (the debtor,) shall not avail himself of such payment in a suit by his creditor, unless he can show an express intention to extinguish the debt. This is not the case before us—The payment was made by *Murray* to *Harris* voluntarily, and without the knowledge of *Merryman*, and certainly without any intention in *Harris* to discharge the debt of *Merryman*.

But this payment is not to be considered as a payment by *Murray* for *Merryman*. It is received only as an over-payment by him of *Harris's* debt against *Bailey*, and having been made through mistake, he has a legal claim against *Harris* to recover it back. But if the claim should be prosecuted, what would be the situation of *Harris?* He would have to look to his remedy against *Merryman* on his sheriff's bond, and would be greatly injured if the payment to him by *Murray* should be construed a discharge of *Merryman*, which it was never intended to operate.

It is then the court's opinion, that the payment made by *Murray* to *Harris*, did not discharge *Harris's* claim against *Merryman*, and that there is a subsisting debt of $162 36 still due from *Merryman*, and his securities. The remaining question to be enquired into is, can the suit brought for it for the use of *Murray*, under all the circumstances of this case, be sustained by him?

It seems to us, that if in any case a court will undertake to decide on the rights of parties arising from the mere operation of law, where they themselves are silent, to effectuate the purposes of justice, this is the case in which their authority ought to be exerted. The debt of $162 36 is justly due from *Merryman*, and it matters not to whom he pays it, if the payment is made to the person best entitled to receive it. Whether *Harris* or *Murray* has the best right to the debt, could only be a question between them, and as *Harris* has received value for it of *Murray*, the court think that the payment of *Murray* operated in equity an assignment of it to him, and he had a right to sue for his use the bond of *Merryman* to recover it. In more instances than one this court has decided, that a payment by a security shall operate an assignment of the debt against the principal, so as to enable him to sue, or execute for it, in the name of the creditor, for his use. *Sotheron* and *Reed*, decided but a few years past in this court, is one of the cases of this description. There *Wright* was security in a testamentary bond, and when he paid the creditor his money, and had satisfaction of record entered on the judgment against himself, he was deemed equitably entitled to the judgment against his principal; and a sale under a *fi. fa.* on the judgment for his use, of the land of his principal, was deemed by this court a good and valid sale.

June 1822.    Under all the circumstances of this case, we are of
~~~          opinion, that it is within the principles of our former deci-
Steuart       sions, and we therefore affirm the judgment.
vs
Donaldson

                                        JUDGMENT AFFIRMED.