*Second Judicial District.*

## In the Court of Common Pleas of Lancaster County.

### BAUSMAN *v.* ESHLEMAN, *et al.*

1. The mere issuing of an execution and placing it in the sheriff's hands binds defendant's after-acquired real estate.

2. An endorsement of levy on after-acquired real estate, at the suggestion of the counsel of the plaintiff therein, does not give such judgment precedence over others on which executions had been issued previously, and on which the endorsement of the levy was not made until actual levy.

**Exceptions to report of Auditor distributing proceeds of sheriff's sale of defendant's real estate.**

Opinion delivered January 18, 1873, by

LIVINGSTON, P. J.   After having a number of judgments entered against them in Lancaster county, these defendants, or some of them, became purchasers at sheriff's sale, and owners of certain real estate therein.

After their acquisition of said real estate (none of the judgments here represented against them being a lien thereupon), on April 3, 1872, The Inland Insurance and Deposit Company issued a fi. fa. on their judgment, to April term, 1872, No. 88, which, on the same day, at 12.15 o'clock, P. M., was placed in the hands of the sheriff.   At a later hour on the same day Bair & Shenk issued fi. fas. on their judgments to April term, 1872, Nos. 90 to 97, inclusive.   These came to the hands of the sheriff at 2.30 o'clock, on the same afternoon.

On April 4, 1872, Jacob Bausman issued fi. fas. on his judgments, to April term, 1872, Nos. 100, 101, and 102.   These came to the sheriff's hands at 11 o'clock, A. M., on that day.   At the time these several writs were placed in the hands of the sheriff, *no instructions were given him with reference to any of them, other than those contained in said writs.*   But at 11.45 o'clock, A. M., on April 4, 1872, *Mr. Bausman's counsel* went to the sheriff's office and there directed him to levy upon the defendant's *after-acquired real estate*, above-mentioned, which the officer proceeded to do, as appears on reference to the Bausman executions.   He says he *commenced to write it down immediately*, but at that time he made no entry or levy on the writs received by him on the day previous, and which were then in his hands.   At 5 o'clock, P. M., of the same day, Bair & Shenk's counsel, finding that the sheriff had made this levy on Bausman's writs, ordered him to levy on this *same real estate on their writs*, which he did as of that date.   No instruction of any kind was given him at any time by The Inland Insurance and Deposit Company, except what the writ contained.

The sheriff did not see the defendants until April 6, when he made an endorsement *levying upon all their property, real and personal, upon all the writs.*

On the return of the writs of fi. fa., writs of vend. exponas were issued and on August 3, 1872, the real estate levied on was sold.

On August 24, 1872, so much of the proceeds of said sale as was not required to pay liens upon said real estate prior to the issuing of these executions, was ruled into court, to wit: $5,460.38. On September 18, 1872, an auditor was appointed to make distribution of this fund among those entitled thereto. Before the auditor, Mr. Bausman's counsel claimed to be *first paid* the full amount due on his executions issued April 4, 1872, *because he first* gave the sheriff special directions to levy on this after-acquired real estate, and thus obtained the first levy and lien thereon.

The Inland Insurance and Deposit Company claimed to be *first paid* out of this fund, because they had issued the first execution, and had it in the sheriff's hands on April 3, 1872 (the day before Bausman's was issued), and upon it the sheriff was bound to levy *without special orders*, on the after-acquired real estate. Also, that the executions first placed in the sheriff's hands, are first entitled to be paid out of the money made.

The auditor being of opinion that the issuing of an execution and *levy* are *both* necessary to acquire a lien upon a defendant's after-acquired real estate—that the mere issuing execution and placing it in the sheriff's hands does not bind defendant's after-acquired real estate, an actual levy on the specific property being required, and that Bausman having been the first to cause a levy upon the real estate in question, has the first lien upon the fund in court—directs that the amount of his executions be first paid in full, to wit: $3453.15, and then directs the balance, after deducting costs of audit ($162.50), to be paid to Bair & Shenk, on account of their claim, viz: $1844.73, as they were next in order in directing the sheriff to levy on said real estate. And to The Inland Insurance and Deposit Company, who issued and placed in the sheriff's hands the first execution, he awards nothing, because *they* gave no special direction to the sheriff to levy on this particular real estate.

To this report the following exception is taken: " The auditor erred in not allowing the claim of The Inland Insurance and Deposit Company." This exception was filed December 10, 1872, and on the same day "withdrawn so far as it pertains to the money awarded on the judgments against John J. Good," said company having no judgment against him.

The sheriff has paid the money into court, and *this*, as Judge Gibson has said in McDonald *v.* Todd, relieves *him* from responsibility, and throws the burden of properly distributing the fund upon the court. It is therefore necessary that we should examine the case presented, and decide it as to law and justice may appertain.

Under the English statutes, when land is taken in execution; it is

*delivered specifically to the creditor* to make satisfaction by the profits of it, without regard to the debtor's title to it, and this is the course pursued in some American states.

But in Pennsylvania the sheriff *sells*—not the land, as the incontestable property of the debtor, but his estate in it, or title to it, *as a chattel,* and at the risk of the purchaser, who takes his chance of recovering on it, against whomsoever may be in possession under an adverse title. Mitchell *v.* Hamilton,. 8 Barr 488; Freeman *v.* Caldwell, 10 Watts 10. And under our statute law, all possible interests in, and titles to, land may be taken in execution—the sheriff sells, and the purchaser buys, the defendant's right, title, and interest in said land; land being considered in Pennsylvania a chattel for the payment of debts. How does this case stand?

Three writs of fieri facias were issued and placed in the sheriff's hands; the first on April 3, 1872, at 12.15 o'clock, P. M.; the second at 2.30 o'clock, P. M., on the same day; and the third on April 4, 1872, at 11 o'clock, A. M.; each of them commanding the sheriff "that of the *goods* and *chattels, lands* and *tenements of these defendants,*" he should cause to be made and levied, the amounts in said writs respectively named.

The real estate afterwards levied on and sold, was, at the time the whole of these writs were issued, owned by the defendants. No levy was endorsed upon any of the writs until 11.45 o'clock, A. M., on April 4, 1872, when an *endorsement* of *levy* was made, at the instance of counsel for plaintiffs on the last execution, and at 5 o'clock, P. M., of the same day, the same endorsement was made, also by direction of counsel, on the second execution; but the sheriff did not see defendants until April 6, when he made an endorsement *levying upon all their property, real and personal, upon all the writs* (so that if an *actual seizure* or levy, was necessary to bind after-acquired real estate, none was made until April 6, and then it was made upon all the writs, and the evidence does not show upon *which writ* a levy was first made upon that day).

Our acts of assembly relating to executions, declare, " that no writ of fieri facias, or other writ of execution, shall bind the property of the goods of the person, against whom such writ of execution is set forth, but from such time as such writ shall be delivered to the sheriff, under-sheriff or coroner to be executed, and require the officer to *time* such writs when received. After this is done, if the defendant neglect or refuse to pay the debt and cost, the officer is to proceed to *levy* and *sell* so much of defendant's personal property (if he have so much), as shall be sufficient to pay the same. And if sufficient personal estate cannot be *found by such officer*, he shall proceed to levy upon defendant's real estate, or such part thereof, not less than a whole tract, as will make up the sum required. It has been decided in Mifflin *v.* Will, 2 Yeates 177, that delivery of a fi. fa., at a sheriff's office or at his house, where he usually transacts his business, is a sufficient

delivery to him to bind defendant's personal property. And with reference to goods and chattels, the writ binds from the time of its delivery to the sheriff, whether a levy has been made or not. 10 Wr. 112 ; 1 Har. 529 ; 6 Cas. 358.

Can a sheriff or other officer entrusted with the execution of a writ of fi. fa. which directs him to cause to be made and levied of the goods and chattels, lands and tenements of a defendant in his bailiwick, a sufficient sum to pay the amount therein demanded, *decline, neglect, refuse or omit* to make a levy on *that* writ, and make a levy on a writ subsequently delivered to him, containing the same commands, at the mere suggestion of the junior execution creditor or his counsel, and thereby defeat the first execution creditor, and prevent him from reaping the fruits of his execution ?

So far as we have examined the decisions, they seem to establish a different practice. Executions issued on the same day, and delivered to the sheriff at different periods of the day, *must be paid* out of the proceeds of the sale in the order, as to time, in which they came to the sheriff's hands. 2 Watts, 303. And as between different plaintiffs, if two writs of execution be delivered to the sheriff on the same or different days, he ought to execute that first which was first delivered to him. 4 East., 523.

Though a sheriff make a *warrant* and *seizure* of goods under a fi. fa. *last* delivered to him, yet the plaintiff in the first fi. fa. delivered over to the sheriff is entitled to be first satisfied out of the fruits thereof. Jones *v.* Atherton, 7 Taunton, 56 ; 2 E. C. L. Reps., 258.

A *seizure in execution* operates as a seizure under all writs of fi. fa. then in the hands of the sheriff. Drew *v.* Lainson, 11 Adol. & Ell., 529. An execution in the hands of a constable is only a lien on property from the time of actual levy in Pennsylvania, and in McCormick *v.* McMillan, 3 Penn'a R. (P. & W.) 230, it is decided that if a constable having *several executions* against the same defendant, in his hands at the *same time,* makes a levy and endorses a schedule of the goods levied on *on one* of the executions, this is a good levy on all the executions in his hands. And in Shaffner *v.* Gilmore, 3 W. & S. 438, the proceeds of the sale of personal property, levied on and sold upon three writs of fieri facias, were applied to the payment of the writ which came first into the hands of the sheriff, *although the property sold was acquired by the debtor after the first two executions and before the third came to the sheriff's hands.*

In Wisconsin, where an execution in a sheriff's hands binds only from the time of the actual levy, it was decided in Knox *v.* Webster, 18 Wis. 406, that a sheriff having two executions in his hands against the same defendant, is bound to levy and satisfy them according to their seniority in his hands. *And the fact that the creditor in the junior execution has been more successful than himself in finding property of the debtor on which to levy, will not justify him in levying that execution first.*

We think that the sheriff is bound to make a levy on the first execution placed in his hands, as soon as he ascertains the defendant has property, real or personal, no matter from whence he derives his information. It may be said that these decisions all refer to personal property. *True,* but we are in *Pennsylvania,* where *land* is held *as a chattel,* for payment of debts.

The auditor, as we have stated, decided that the fund in court, being the proceeds of the sale of after-acquired real estate of defendants, must be distributed upon a different basis, being of the opinion that the issuing and placing of an execution in the sheriff's hands, was not sufficient to bind it, but that there must also be an actual levy, and cites Stauffer *v.* Commwth., 1 Watts 300, and Parker's Appeal. These cases are perfectly good law, but neither of them decide the question here presented, or meet the question now raised.

In Stauffer *v.* Commwth., the treasury warrants were issued and levy made before the judgments of the contesting creditors were entered ; and in 6 Barr 277, Parker's Appeal, a fi. fa. was issued and levy made January 12, 1846, while the contending creditor did not obtain his judgment until January 23, 1846; so *that in neither case* was it decided that the issuing of a fi. fa., and placing it in the sheriff's hands, would not have bound the defendant's interest in such after-acquired real estate, *being pursued bona fide,* or that a sheriff could pass by a first execution in his hands, and, at the instance of a junior execution creditor, make the first levy on his writ.

If a fi. fa. issued and placed in the hands of the sheriff, does not bind a debtor's interest in after-acquired real estate, owned by him when the writ is delivered to the sheriff, and the sheriff is not bound to make a levy thereon upon the first writ of fi. fa. he receives, and nothing but an *actual levy* will bind such interests, the debtor himself, or any junior execution creditor may entirely defeat the first execution creditor, and appropriate to themselves, or either of them, that to which he is fairly entitled in justice, and we think, in law. For the debtor may, between the issuing of the execution and an actual levy, sell and convey the after-acquired real estate intended to be levied on, free, clear and discharged of the execution ; or, he may borrow money to an amount equal or nearly equal to the value of the property, and execute and cause to be entered judgments or mortgages therefor, which would be a lien *prior to the levy,* and defeat it. And, in either case, the debtor would pocket the proceeds, or the sheriff, being allowed considerable time to levy and make return of the writs, a junior execution creditor may, in an hour after the first execution is placed in the hands of the sheriff, and before the sheriff has had time to leave his office to make a levy or inquire as to defendant's property, place his execution in the sheriff's hands, and have him levy upon certain property which *he* happens to know belongs to defendant, and thus defeat

the first execution creditor and appropriate the funds to satisfy the junior execution. We think that while the law favors the vigilant, it *does not favor* this method of levying on junior executions by the sheriff, at the instance of junior execution creditors, to the detriment of the first execution creditor.

While we have no direct decision upon the point here raised, we may be pardoned for referring to what his honor Judge Yeates said with reference to a writ of elegit (a writ of execution), in regard to after-acquired real estate of a debtor. In 6 Bin, 139, he says, "It cannot be denied that one may fairly sell his lands, pending a writ sued out against him, before judgment, but that he cannot defeat a judgment by a sale of the lands of which he was seized when the judgment was given. As to after-purchased lands, the previous judgment, in my idea, does not affect them," "*but they are bound by the delivery of the writ to the sheriff.*" "*I understand the law to be, that after-purchased lands of which the debtor stood seized at the time of the delivery of the elegit to the sheriff, became thereby subject to the debt in the same manner that all his personal property would then become.*"

Being of opinion that the first execution placed in the hands of the sheriff, bound from that time the interest of the defendants in the after-acquired real estate *then* owned by them, and that the sheriff was bound to levy thereon, upon the first writ, as well as all the other writs, as they came to his hands, upon receiving information of their ownership thereof from any source, we think the auditor erred in the distribution presented in his report, and sustain the exception taken thereto. And we do now direct and decree that the fund now in court shall be distributed as follows, to wit:

Whole fund in court.................................................$5,460.38
Deduct costs of audit, as per report filed...........................  162.50

   Which leaves the sum of..............................$5,297.88
Deduct one-half of this sum as belonging to the creditors of
 J. J. Good (and paid to them), he being owner of half the
 real estate sold, and the first execution creditor had no judg-
 ment or execution against him.......:............................ 2,648.94

This leaves for distribution as proceeds of the sale of real estate
 of Benjamin Eshleman.............................................$2,648.94
Of this sum is to be paid to The Inland Insurance and Deposit
 Company, on first execution....................................... 2,389.10

And to Bair & Shenk on second execution.............. ...........  259.84

  G. M. Kline, Esq., for plaintiff.

  Hon. O. J. Dickey, W. Leaman, and J. Hay Brown, Esqrs., for the other creditors.