# WHEELING.

### BEARD *v.* ARBUCKLE *et al.*

Submitted January 19, 1880.   Decided December 10, 1881.

*(PATTON, J., Absent.)

1. If a sheriff, who has had or who has an execution in his hands, pays the amount of the debt to the creditor without intending to extinguish the debt, whether he takes an assignment of the judgment or not, may have a right under circumstances to enforce the payment of the debt against the debtor.

2. Whether in a creditors-bill such judgments so paid will have priority over the liens of subsequent creditors, is not decided, as in this cause such creditors do not object to it, and the debtor is not prejudiced by such preference being given.

3. It is error to decree the sale of lands to discharge liens thereon, until the amounts of the liens and their priorities are ascertained and fixed, and the error will not be cured by the creditor, the amount of whose lien is not ascertained, consenting in the decree, that the lands, on which he has a lien, may be sold, before the amount of such lien is ascertained.

4. It is error to decree the sale of lands to pay liens charged thereon and in the same decree to recommit the report ascertaining the liens and their priorities with leave to the debtor to prove further credits.

5. A decree will not be reversed at the instance of the appellee for an irregularity, which is not to his prejudice.

6. A debtor cannot have a decree reversed confirming a sale of real estate for an error in the decree ordering the sale, when he has taken no steps in the court below before the confirmation to review said decree, except perhaps in some case where the purchaser is a party to the suit.

7. It is not error for a court to refuse to extend the time for a debtor to prove payments before a commissioner, when the record shows no good reason for such extension of time.

8. It is not error on the petition of a debtor to refuse to permit the filing of a petition to cancel a paper in the case, which admits his liability for a debt, when the petition shows no equitable grounds for such cancellation

Appeal from and *supersedeas* to four decrees of the circuit court of the county of Greenbrier, rendered respectively on the 13th day of November, 1876, the 7th day of February, 1877, the 26th day of May, 1877, and the 25th day of June, 1877, in a cause in said court then pending, wherein Hannah

---

*Cause submitted before Judge P. came upon the bench.

R. Beard was plaintiff, and Matthew Arbuckle and others were defendants, allowed upon the petition of said Arbuckle.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

JOHNSON, PRESIDENT, furnishes the following statement of the case :

This cause has been before this Court, on a previous occasion, when the appeal and *supersedeas* were dismissed, because they ought not to have been allowed to said decrees appealed from, if at all, without being allowed to other decrees in the cause rendered afterwards. 13 W. Va. 732.

In April, 1876, the plaintiff filed her bill in the circuit court of Greenbrier county against the defendant, Arbuckle, and her co-creditors, in which she sets up numerous judgments and other liens, among them her own against the said defendant, and prays for an ascertainment by a commissioner of the lands owned by said Arbuckle and the liens thereon, their character and priorities, &c.

In March, 1876, in vacation the judge of the circuit court of Greenbrier county, referred the cause to a commissioner with instructions to make a report as to the lands owned by defendant, Arbuckle, the liens thereon, their amounts, priorits, ie &c. Alexander F. Mathews answered the bill setting up various judgments against said Arbuckle, which he claimed to own by assignment.

On the 16th day of May, 1876, the commissioner filed his report, in which he found the amount of judgments due Alexander F. Mathews to be, principal and interest, $1,638.13 and placed his judgments in Class 2 and ascertained the whole indebtedness to be $30.205.18. On the 28th day of October, 1876, the commissioner made a second report, in which he made some slight changes and stated, that "Class 3 is not ascertained as to amount, but suit is pending for the same in this court, and the amount ascertained to be due is a specific lien on tract 13, of first statement, as it is a portion of the unpaid purchase-money, for which vendor's lien is retained." Class 3 is as follows : "James Miller v. M. Arbuckle. Balance of purchase-money on eighty acres of land unascertained. Lien from April 22, 1867, on eighty acres land."

To the report filed October 28, 1876, the defendant Arbuckle excepted; but only two of the exceptions being here insisted upon, no others will be noticed. These two are as follows: " The debt reported in favor of A. F. Mathews is greatly in excess of what is really due thereon. By reference to Exhibit 7 the judgments assigned to said Mathews may be seen. After deducting the payments made by this exceptant on said judgments the balance will not be $3.815.21, as stated in said Exhibit 7. The calculation, by which this result was reached, was erroneous, and mistakes were made, as exceptor will be able to show."

The other exception is : " The amount due to James Miller is not ascertained by commissioner, and the matter is now in litigation in a different suit."

Exhibit 7 referred to in the first exception is filed with A. F. Mathews's answer and is as follows: " I hereby certify, that the following judgments against me assigned by A. Beard to James H. Renick and S. C. Beard and by them assigned on the 3d day of November, 1872, to Alexander Mathews, viz: a judgment of the circuit court of Greenbrier county at the —— term ——, 18—, in favor of H. Handly for Graham for $1,500.00, with interest and costs ; a judgment of the county court of Greenbrier county, at August term, 1859, in favor of John Lipps for $432.00 with interest and costs ; a judgment of the county court of Greenbrier county at the April term, 1859, in favor of James Wright for $210.00 with interest and costs, and a judgment of the circuit court of Greenbrier county at the May term, 1859, in favor of Feamster for Nickell for $2,000.00 with interest and costs, amount upon settlement this day made with said Mathews, assigned as of the date of said assignment to him November 3, 1872, after deducting all credits, offsets and counter-claims of every kind and description, which I have, or to which I am entitled against said judgments, including a payment made thereon to said Mathews, since said assignment out of money paid me by —— Hares on the Byrd place to the sum of $3,815.21, all principal as of the said 3d day of November, 1872. As witness my hand and seal this the 11th day of March, 1875.

"M. ARBUCKLE.   [Seal.]"

On the 14th day of June, 1876, James Miller asked leave

to file his petition and answer to the plaintiff's bill, which leave was granted, and said petition and answer were filed; but neither they nor either of them are in the record. Therefore the cause was recommitted to Commissioner McWhorter with instructions to have such evidence and take such further proof of debts, as may be adduced before him, and to reform and restate his original report in accordance therewith, so far as might be necessary. Thereupon the cause was continued until the next term without such report being made. On the 13th day of November, 1876, the cause was heard among other things upon the two reports of Commissioner McWhorter and the exceptions to the supplemental report. The exceptions were overruled, and " the second or supplemental report, which is but a substitute with certain additions and modifications for said first or original report," was "in all respects confirmed; and there were ascertained from said reports the said debts and their amounts and priorities; and then follows: " and the defendant James Miller, who claims to have a debt against said Arbuckle as a lien upon a tract of land of eighty acres, which has not yet been ascertained and fixed, here entering by his attorneys his consent on the record, that said tract may be sold without waiting to have said debt judicially ascertained and decided, it is therefore further adjudged, ordered and decreed, that the said parties recover from the said M. Arbuckle the said several sums of money respectively," &c., and unless the said debts were paid within ninety days, the commissioners therein appointed were required to sell the lands. The decree further provided, that " the tract of about one hundred and fifty-eight acres known as the ' Creigh Place' or 'Home Place' should be sold for one third cash, balance upon a credit of one and two years with interest thereon from the day of sale, and the other lands for so much to be paid cash in hand as may be necessary to pay the costs of suit and expenses of sale, and the balance on a credit of six, twelve and eighteen months, &c."

Another provision of the decree was, that the commissioners might after retaining a proportionate part of the expenses of sale " pay over the cash-payment to be made as aforesaid upon the home or Creigh place without waiting for a confirma-· tion of said sale to Mrs. Caroline Bloomer, who has the first

lien thereon, upon her executing and delivering to them a proper refunding bond with security to be by them approved conditioned for the repayment and return of said money, should the said sale thereafter be set aside by the court." It is also a part of the said decree, that " the second or supplemental report is recommitted to commissioner, J. M. McWhorter with leave to the defendant, M. Arbuckle, to estabtablish by sufficient and competent testimony any credits, payments or offsets upon the debts reported against him as aforesaid within sixty days from the date of this decree." The conclusion of this decree is: " But this decree is without prejudice to the debt due A. S. Skaags, which was overlooked by commissioner McWhorter or which is due to Austin Handly, if it has been paid by him as security of said Mathew Arbuckle, as set out in the answer of Austin Handly filed in this cause ; and said commissioner McWhorter is directed to report to this Court the amount still due on the judgment rendered in favor of A. S. Skaags, if anything, to whom due, and the priority of said debt, and what proportion thereof, if anything, has been paid by said Austin Handly as security for the said Mathew Arbuckle."

Mathew Arbuckle presented his petition, which is sworn to, on January 31, 1877. The petitioner gives his reason for not having within the sixty days allowed him filed proofs of payments on debts reported by the commissioner. In his petition he attacks the debts allowed A. F. Mathews and says, that they did not at the date of exhibit 7 amount to the sum therein set forth ; that he confided to said Mathews to make the calculations, " not dreaming that he would take any adventage of him ;" that he executed the said paper exhibit 7 ; that since the said paper was executed, he has had the calculations made by others, by which it appears, that he owed much less than the sum found against him in the settlement. He claims, that he is entitled to credits on other claims. He says, that Mathews had been his counsel, and he had the fullest confidence in him. He charges, that said paper was procured by fraud, and that it ought to be cancelled and held for naught. He prays, that the decree of October (he means evidently October term, November 13) be reversed and modified ; that exhibit 7 be cancelled and set aside, &c.

By an order entered in the cause on the 7th day of February, 1877, the cause was heard upon the application of petitioner to file said petition, which was refused. The third report of commissioner McWhorter was filed May 21, 1877, fixing the amount of the Skaags lien and its priority. On the 14th day of March, 1877, the commissioners reported, that they had in accordance with the terms of the decree of sale sold the " Creigh " place on that day and Caroline Bloomer had become the purchaser at $8,800.00, of which she paid $347.62 in cash, the proportionate part of the costs and expenses of sale, and elected to pay and did pay the balance in cash to the commissioners. On May 21, 1877, the said commissioners reported, that they had on that day pursuant to the said decree of sale sold the residue of the said property and to whom and at what price, &c. To the first report of sale there was no exception. The defendant Arbuckle excepted to the second report of sale for several reasons. On the 26th day of May, 1877, by a decree entered in the cause the report of the sale to Caroline Bloomer was confirmed, and such proceedings were had upon the exceptions to the second report of sales, that the court by its decree of June 25th, 1877, set aside all said sales made on the 21st day of May, 1877, mentioned in said second report ; and A. F. Mathews, one of the commissioners, declining to further act, J. W. Harris, the other commissioner, was directed, "as soon as may be to resell the said lands " * * "upon the terms provided for and mentioned in the former decree of sale entered at October term, 1876; and Mathew Arbuckle is hereby directed as a special receiver of this court to take possession of said lands directed to be re-sold and take care of same, and he is directed not to graze said lands or to permit it to be done by others."

The defendant, Mathew Arbuckle, gave notice to defendants, and plaintiff, that he would on Tuesday, October 22, 1878, move Hon. H. A. Holt, judge, &c., to review, reverse and set aside the decrees of November 13, 1876, Feburary 7, 1877, May 26, 1877, and June 25, 1877, for errors appearing upon the face of the record, and gives as grounds for such review and reversal substantially the same that he insists on in this Court. On the 22d day of October, 1878, the said judge in vacation overruled said motion. Upon petition of the de-

fendant, Arbuckle, appeals from and *supersedeas* to the decrees of November 13, 1876, February 7, 1877, May 26, 1877, and June 25, 1877, were on the 26th day of October, 1878, allowed by this Court.

*Dennis & Dennis* for appellant cited the following authorities : 19 Gratt. 458 ; *Clevinger* v. *Miller,* 27 Gratt. ; 19 Wend. 79 ; 12 W. Va. 611.

*Mathews & Mathews* for appellees cited the following authorities: 9 W. Va. 695; 5 Cal. 149; 22 Ia. 230; 11 La. Ann. 455; 3 Gill & J. 450; 28 N. Y. 508; 18 Md. 245; 44 Barb. 636; 9 W. Va. 424 ; Code, ch. 124, § 5 ; 6 W. Va. 196 ; 16 Gratt. 134; 27 Gratt. 740; 10 W. Va. 298; 11 W. Va. 339; 6 W. Va. 1; 3 Call 200; 9 Gratt. 142.

JOHNSON, PRESIDENT, announced the opinion of the Court:

The first error assigned is, that the decree of the 13th of November, 1876, is erroneous, because, as is claimed, the answer of A. F. Mathews and the exhibits filed therewith show the origin and history of the debt decreed to him and show, that Andrew Beard was sheriff of Greenbrier county, and as such sheriff had in his hands several executions against the defendant Arbuckle, that he voluntarily paid them off as sheriff, and having thus discharged them he treated the judgments, on which they issued, as his own and assigned them to James H. Renick and S. L. Beard, and they assigned them to Mathews. The appellant's counsel further insists, that these judgments having been voluntarily paid off by Beard as sheriff were discharged and satisfied and no longer had any legal existence. That neither the executions nor the judgments, on which they were issued, nor the original evidences of debt, on which the judgments were obtained, were ever assigned to said Beard.

The appellant Arbuckle did not answer the bill, and never until now has he denied, that Mathews was entitled to all, that is due upon said judgments. It does not appear in the record, whether the original creditors assigned the said judgments or claims to Beard the sheriff or not. If that matter had been put in issue, Mathews might have been able to show, that such was the fact. None of the creditors raised the ques-

tion in the court below in any way and do not here question the validity or priority of the said judgments as ascertained and fixed by the commissioner; and it is a little late for the appellant to insist here, that he is not bound to pay said judgments after executing Exhibit 7, in which he acknowledged a settlement with Mathews, and that he had paid money to Mathews on these judgments and agreed what the balance should be. This was a ratiffcation of the payment by Beard.

In *Neely* v. *Jones*, 16 W. Va. 628, this subject was carefully considered. It was there held, that a stranger, who pays a debt without request or anthority of the debtor, when the payment is not afterwards ratified, may, if he chooses, bring a suit in equity stating this fact and praying, that if the payment be not ratified by the debtor, the debt may be enforced in his favor as the equitable owner thereof, or, if the payment be ratified by the debtor, that the court will decree to the stranger the repayment of the amount so advanced by him for the use of the debtor, and the court will give the one relief or the other. The stranger, when he pays the amount of the debt to the creditor, may without the consent of the debtor take an assignment of the debt and enforce it against the debtor; and if, when he pays the amount, it is agreed between the creditor and himself, that the creditor will assign him the debt, though no actual assignment be made, the stranger will be regarded as the equitable assignee of the debt, and the transaction will be considered equivalent to the purchase of the debt. If a sheriff, who has had or has an execution in his hands, pays the debt to the creditor, whether he takes an assignment of the judgment or not, he will have the same rights and remedies against the debtor, that a mere stranger would have. But the *quære* was propounded in that case: " Does not public policy forbid, that such sheriff should have the same rights and remedies as against subsequent judgment-creditors, who have acquired liens on the debtor's lands, or against a purchaser of such lands for valuable consideration without notice, that the sheriff set up such claim ?" The *quære* must still remain unanswered, because, although there are subsequent creditors here, none of them· complain of the decree. ʼArbuckle being liable to pay the

judgments to Mathews, he certainly cannot complain of the decree in this respect, as it does not prejudice him.

It is also assigned as error in said decree, that it was entered requiring the lands to be sold, before the amounts and priorities of the liens thereon were ascertained. We are sorry to have to consider this question, as it has been so often before this Court. But we must again hold, that it is error for a court of chancery to decree a sale of land to discharge liens thereon until the amounts and priorities of the liens are definitely fixed. At the time the decree, which we are considering, was rendered, the amounts of two liens, to wit, one of Miller and one of Skaags, were not ascertained, and the priority of the Skaags lien was not fixed. There was an effort made in the decree to cure the defect of the Miller lien by his consent in the decree, that the land, on which he had a lien, might be sold before the amount of his lien was ascertained. But this did not cure the defect; the debtor, as well as the other creditors, were interested in having the amounts of all the liens and their priorities ascertained and fixed, before a sale was ordered. This not being done, it was error to decree the sale at that time. It was error also to leave the amounts of the liens in uncertainty before the sale by re-committing the report to the commissioner with leave to the debtor within sixty days to reduce the amounts of any of the liens by proving payments. *Scott* v. *Luddington*, 14 W. Va. 387. If there was any good reason for recommitting the report to the commissioner with leave to the debtor to prove further payments, if he could, it should have been done, before the sale was ordered, and the sale should not have been ordered, until the report was returned, and the amounts as well as the priorities of the liens definitely ascertained and fixed.

It is further insisted, that it was error in said decree, to direct, " that the ' Creigh' or ' Home Place ' should be sold for one third cash in hand, and the cash-payment to be paid over to Mrs. Caroline Bloomer without waiting for a confirmation of the sale. It is generally improper to direct the distribution of the proceeds of a sale, before the sale is confirmed, but this irregularity in this cause is not to the prejudice of the appellant. Irregularities in a decree, which do not injure the appellant, are not sufficient grounds for reversing it on his

motion. *Vance* v. *McLaughlin's adm'r*, 8 Gratt. 287. The court did not err in said decree in overruling all the exceptions to the commissioner's report except the one we have considered, the failure to ascertain the amount of all the liens and fix their priorities.

It is alleged, that there is error in the decree of February 7th, 1877, because upon the petition of Arbuckle the court refused to extend the time, within which petitioner might take his proof of payments. He had six months, before the decree of November 13th, 1876, was entered, within which to prove his payments; and it does not appear in the cause, that before the commissioner he asked for further time, and the granting of the further time from the facts in the record was a mere gratuity and indulgence to Arbuckle, to which he did not show himself entitled.

It is also assigned as error in said last named decree, that the court did not on said petition set aside and cancel exhibit 7. The petitioner does not show any grounds for cancelling said exhibit. What the petitioner alleges as fraud in the procurement of said paper does not amount to fraud. He had the opportunity to see and know, that the calculation of interest was correct or otherwise, as well as Mathews; and there was no such relation existing between them as to this transaction, as should have thrown the said petitioner off his guard. It was the debtor dealing with his creditor, and not a client dealing with his attorney. The court did not err in refusing to permit said petition to be filed.

It is also assigned as error in the decree of May 26, 1877, that it confirms the sale made to Mrs. Caroline Bloomer of the Creigh or "home place." The defendant, Arbuckle, took no steps whatever to have the decree, under which said sale was made, reviewed and set aside before the confirmation of the sale to Mrs. Bloomer. Under such circumstances the sale must stand, although the decree, under which it was made, may be reversed. *Charleston Lumber Co.* v. *Brockmyer et al.*, 18 W. Va, 586.

There is no objection to the said decree of February 7, 1877, which can avail here; and it must be affirmed.

It is assigned as error in the decree of June 25, 1877, that it directs a re-sale of the lands without having the amounts of

all the liens ascertained, and their priorities fixed. The amount of the Skaags lien was ascertained and its priority was fixed by a third report of the commissioner, before the decree of June 25th was entered. But the error in the first decree of sale on November 13, 1876, before the amount of the Miller lien was ascertained, is carried into the decree of June 25, 1877, and for that reason it is also erroneous and must be reversed.

For the same reasons we must reverse the said decrees of November 13, 1876, and June 25, 1877. The judge in vacation on the 22d of October, 1878, erred in overruling the motion of plaintiff to correct said decrees in the said particulars.

For the foregoing reasons the decrees rendered in this cause on the 7th day of February, 1877, and the 26th day of May, 1877, respectively are affirmed; but the decrees rendered in this cause on the 13th day of November, 1876, and on the 25th day of June, 1877, respectively are reversed with costs to the appellants against all the appellees except Caroline Bloomer; and this cause is remanded to the circuit court of Greenbrier county with instructions to proceed therein according to the principles of this opinion and according to equity.

JUDGES HAYMOND AND GREEN CONCURRED.

TWO OF THE DECREES AFFIRMED AND TWO REVERSED.

CAUSE REMANDED.

---

# WHEELING.

Submitted January 19, 1880. Decided December 10, 1881.

