## CHARLESTOWN.

### MOORE *v.* LIGON.

Submitted September 14, 1883—Decided October 2, 1883.

A married woman purchases land for her sole and separate use of a commissioner of a court, and the title of the land is retained as security for the purchase-money, and this purchase is confirmed by the court. She then enters into a written contract with a third person, whereby he agrees to pay all the unpaid purchase-money of the land, and in consideration thereof she agrees to transfer to him her purchase and to substitute him for her as purchaser as to all of said land except a specified part thereof, and her husband also signs this contract. This third person complies with the terms of the contract and pays all the unpaid purchase-money of this land to the court; but she refuses to comply with said contract. HELD :

This is a contract for the sale of land owned by a married woman as her separate property to which she had but an equitable title, and is not binding on her—even a formal deed would be void where there has been no privy examination of her ; but the third person paying the purchase-money under these circumstance is entitled to have all the purchase-money, which he had paid for her, treated as an unauthorized payment, and as therefore not discharging the debt due from her to the court, and to ask the court to enforce the payment thereof against her for his benefit by a sale of her land if necessary.

GREEN, JUDGE, furnishes the following statement of the case:

Isaac Moore at the September rules, 1882, filed his bill against Sallie G. Ligon and John Ligon her husband. The following is his bill:

"The bill of complaint of Isaac Moore filed in the circuit court of Pocahontas county, against Sallie G. Ligon and John Ligon.

"The plaintiff complains and says that on the 2d day of May, 1877, Sallie G. Ligon became the purchaser at a judicial sale, under a decree of the circuit court of said county, rendered in the chancery cause of *James Wood's Ex'or* v. *John W. Warwick et als.*, of all the lands of said Warwick, embraced in said sale, and known as the 'Clover Lick' prop-

erty at the sum of fourteen thousand dollars, and after deducting her proportion of the cost of suit and sale she executed her three several bonds with security, for thirteen thousand two hundred and seventy-seven dollars and seventy-four cents payable in three equal annual installments. The sale thus made was confirmed by the court to her as purchaser, and a deed directed to be made to her, when the purchase-money was all paid.

"That the said Sallie G. Ligon, on the 23d day of August, 1877, after the confirmation of said sale by a contract in writing herewith filed as a part of this bill, which contract is also executed by her husband the said John Ligon, assigned and transferred to the plaintiff her said purchase, he agreeing on his part to refund to her, her cash payment in the manner set forth in said contract, and to pay off her said bonds as they respectively become due and payable; that the said Sallie G. Ligon by her said contract reserved to herself twenty acres of land, lying north of the mouth of Clover Creek, being part of the property purchased by her as aforesaid; that plaintiff has fully complied with said contract on his part, and a deed has been executed to him for the land so purchased by him, by a commissioner of the court, in which deed the said John Ligon has united, but the said Sallie G. Ligon refuses to execute any deed for the lands bought of her as aforesaid by plaintiff. The record of the said chancery suit of *Wood's Ex'or* v. *Warwick et als.*, is here filed and referred to as a part of this bill and prayed to be examined in connection with this bill.

"The plaintiff is advised that he has a right to a deed from said Sallie G. Ligon, conveying to him all her right, title and interest to said land, and if under law she cannot be compelled to execute a deed to him for the land aforesaid, then he says that having paid fourteen thousand dollars of the purchase-money for said land, for the said Sallie G. Ligon, he holds a lien on said land for that amount, and its interest, or that he can and ought to be substituted to the rights of the creditors whose debts he has thus discharged.

"He, therefore, prays that the said Sallie G. Ligon, and John Ligon may be made parties defendant to this bill and required to answer the same; that the said Sallie G. Ligon

may be required to execute to him a deed for said lands, or else that a commissioner may be appointed by the court, who shall convey all the right, title and interest of said Sallie G. Ligon in said lands to the plaintiff, or that said land may be sold in order to reimburse your orator for money thus paid by him. And grant unto him such other further and general relief as is consistent with equity and applicable to his case. And he will ever pray, &c. May the State's writ issue, &c."

The following is the exhibit referred to and filed with this bill:

"Article of agreement made and entered into, this 23d day of August, 1877, between John Ligon and Sallie G. Ligon, his wife, of the one part and Isaac Moore of the other part, all of the county of Pocahontas, in the State of West Virginia, *Witnesseth:* That whereas, on the 2d day of May, 1877, the said Sallie G. Ligon became the purchaser at a judicial sale, under a decree of the circuit court of Pocahontas county, in the chancery cause of *James Wood's Executor* v. *John W. Warwick* of all the lands of the said John W. Warwick, embraced in the 'Clover Lick' property and embraced in said sale for the sum of fourteen thousand dollars; and, whereas, after deducting the legal costs of suit and sale, the said Sallie G. Ligon did execute her bonds with security, as required, for the residue, in three equal annual installments, amounting in the aggregate to thirteen thousand two hundred and seventy-seven dollars and seventy-four cents; and, whereas, the said Sallie G. Ligon desires to sell and does hereby sell her interest purchased as aforesaid to Isaac Moore, she hereby transfers to said Isaac Moore her purchase as aforesaid, and hereby substitutes said Isaac Moore in her place as purchaser as aforesaid of all the lands of the said John W. Warwick, which are more fully described and set forth in the papers and exhibits of the said cause of *James Wood's Ex'or* v. *John W. Warwick,* to which reference is here made, and also transfers to said Moore all rents accruing or which have accrued to her as purchaser aforesaid. And the said Moore on his part in consideration of said lands and rents, agrees to pay the legal costs of suit and sale, and also binds himself to pay the bonds as they fall due of the said

Sallie G. Ligon, which she executed for the purchase-money, taking upon himself all obligations in the premises of the said Sallie G. Ligon as the original purchaser. It being understood, however, that the said Sallie G. Ligon shall retain out of the land purchased at said sale a certain tract of twenty acres of land, lying north of the mouth of Clover creek. And the said John Ligon and Sallie G Ligon relinquish to said Isaac Moore all interest acquired by them through the purchase of said Sallie G. Ligon of all the lands, except the twenty acres above referred to, and hereby authorize the circuit court of said county of Pocahontas, or the commissioner of said court in said cause of *Wood's Ex'or* v. *John W. Warwick* to convey to said Isaac Moore the lands above referred to (with the exception of the twenty acres as above mentioned, which is to be conveyed to the said Sallie G. Ligon, or her subsequent assignees) as soon as said Moore has complied with the conditions of the sale on his part. Witness the following signatures and seals:

> "S. G. LIGON,    [SEAL.]
> "JOHN LIGON,    [SEAL.]
> "ISAAC MOORE,    [SEAL.]"

On June 19, 1883, Sallie G. Ligon filed her general demurrer to this bill; and thereupon the court entered the following decree in said cause and in the cause referred to in the bill of *James Wood's Ex'or* v. *John W. Warwick, &c.*, to-wit:

"These two causes came on the 19th day of June, 1883, to be again heard together, the first upon papers formerly read, the second upon the subpœnas returned executed upon all the defendants therein, the bill filed by the plaintiff, the demurrer thereto by the defendant, Sallie G. Ligon, joined in said demurrer, exhibits filed, being the contract between said Isaac Moore on the one part and Sallie G. Ligon and John Ligon, her husband, of the other part, which is proved in open court, and the arguments of counsel, upon consideration whereof, the court is of opinion and decides that Isaac Moore be substituted as the purchaser in the room and stead of the said Sallie G. Ligon as the purchaser of the tracts of land in the second of the said causes, and in the exhibits therewith filed, mentioned and described, with the exception of twenty acres, part thereof, situate on the north of the mouth

of Clover creek, reserved and retained by the terms of said exhibit by the said Sallie G. Ligon, and that as to the residue of said lands bought as aforesaid, the said Sallie G. Ligon has no interest therein or title thereto; and it is, therefore, adjudged, ordered and decreed that said demurrer be overruled, and that F. J. Snyder, the commissioner heretofore appointed in the first of said causes, execute and deliver to said Isaac Moore a deed in fee simple with special warranty of title for all the balance and residue of said lands, except said twenty acres, free from all claim on the part of said Sallie G. Ligon, and that he in like manner convey the said twenty acres to the said Sallie G. Ligon, for which the grantees in each of said deeds shall pay him a fee of five dollars, the court regarding and deciding that said Isaac Moore is the real and substantial purchaser of said lands; and it is further adjudged, ordered and decreed that each of the parties, plaintiff and defendant, in the second of said suits pay his own costs, and the purpose of this suit having been fully accomplished, it is ordered that it be omitted from the docket."

To this decree an appeal was granted by a judge of this Court.

*R. S. Turk* for appellant.

*R. F. Dennis* for appellee.

Green, Judge:

The first question for our consideration is: Should the demurrer to the bill in this cause have been overruled, as was done by the circuit court in its decree of June 19, 1883? To determine this question we must first decide, whether on the facts stated in the bill the plaintiff has a right to demand a specific performance of the written contract (filed with the bill) entered into by the plaintiff and the defendant, Sallie G. Ligon, a married woman, which contract was executed also by her husband, the bill stating that all the provisions of said contract imposing obligations on the plaintiff have been fully complied with by him. The contract on her part was to convey certain real estate particularly described, and which was her separate real estate, and to which she had a

complete and perfect equitable title. The decisions rendered by this Court make it entirely clear, that the specific execution of this contract could not be enforced against her. She never after a privy examination acknowledged this written contract; and if she had had no separate estate in this property, this contract for the sale of her land would of course have been absolutely void as to her, and as a matter of course such contract could under no circumstances have been specifically enforced against her. See *Gillespie et al.* v. *Bailey et al.*, 12 W. Va. 70, syl. 1. The fact that she had a separate estate in the land, which she agreed to convey, in no manner alters the case. This has been repeatedly decided by this Court. In *Radford et al.* v. *Carwile et al.*, 13 W. Va., 573, syl. 7, it is laid down, that "Her common law disability to make any contract or incur any debt during her coverture, which will in any manner affect or change the *corpus* of her real estate, whether such estate be her *separate* property or not, is still in full force. The *corpus* of her real estate can only be affected or changed by the vendor's lien, when it has been reserved or by a *conveyance* or specific lien created by deed, in which her husband has united with her, and which she executed after *privy examination.*" It is equally clear and well settled by the decisions of this Court, that a married woman, who has the equitable title to real estate, whether she has in it a separate estate or not, can affect such real estate by a conveyance or specific lien created by deed, where her husband unites with her in such deed, and when she executes and acknowledges it together with him for recordation after *privy examination* of her. And she can in no other way convey her *separate* real estate, to which she has an equitable title. See *Hughes & Co.* v. *Hamilton et als.*, 19 W. Va. 366, syl. 4.

But before we can conclude, that the demurrer to the bill in this cause should have been sustained and the bill dismissed, we must not only conclude, that the plaintiff not only had no right to ask a specific execution of this written contract against the female defendant, a married woman, but also that he had no lien upon her land in this contract named. For though the primary object of the bill was to enforce against her the specific execution of this contract,

which cannot be done, yet a secondary object of this bill was to have it declared, that the plaintiff had a specific lien on her land in this contract named, and to enforce this lien by a sale of the land. This double object or alternate relief sought by the bill is distinctly stated on the face of the bill ·in the following· words:

"The plaintiff is advised, that he has a right to a deed from said Sallie G. Ligon conveying to him all her right, title and interest to said land, and if under law she cannot be compelled to execute a deed to him for the land aforesaid, then he says, that having paid fourteen thousand dollars of the purchase-money for said land for the said Sallie G. Ligon, he holds a lien on said land for that amount and its interest, or that he can and ought to be substituted to the rights of the creditors whose debts he has thus discharged."

Now while it is clear, "that under the law she cannot be compelled to execute a deed to him for the land," yet if on the facts stated in the bill "he holds a lien on said lands for fourteen thousand dollars or any other amount, a demurrer to the bill could not be sustained; for the right of the plaintiff to enforce such lien would be recognized as proper in this cause by virtue of the alternate and general prayer for relief contained in the bill. Before therefore we can decide, whether the demurrer to this bill should have been sustained or overruled it is necessary for us to determine, whether or no the plaintiff had on the facts stated in his bill a lien on said land.

There was an admitted lien on this land of thirteen thousand two hundred and seventy-seven dollars and seventy-four cents due from the female defendant, a married woman, to secure unpaid purchase-money, for which she had executed her bonds with security. This unpaid purchase-money the plaintiff agreed to pay off for the female defendant from whom it was due, and as a part of the same agreement she at the same time agreed "to relinquish to the plaintiff all her interest in all of said lands except twenty acres specified, and authorized the court to convey to the plaintiff all said lands except these twenty acres." After the plaintiff had paid off this purchase-money the defendant refused to relinquish her interest in any of this land or to authorize the court to con-

vey to him any part of said land.    Will this payment by the
plaintiff of a debt due from the female defendant in the view
of a court of equity extinguish the debt?  The payment of this
large debt was made by the plaintiff, when he supposed he
was under an obligation to pay it by reason of this contract;
and the law applicable in such case is thus stated in White
and Tudor's Leading Cases in Equity (4th Am. ed. from 4th
London ed.) vol 2, part 1, pp. 290, 291 :  "A merely volun-
tary payment by one, who supposes he is under an obliga-
tion, certainly  does not extinguish the debt nor does it con-
fer a right of subrogation.   When the mistake is partly  one
of law, it can hardly be the duty of the creditor to refund.
Yet as he retains the right to proceed against the debtor, it
would seem he ought to exercise it for the benefit of the per-
sons who have fallen into the error.   See *Whiting use of Sun
Mut. Ins. Co.* v. *Ind. Mut. Ins. Co.*, 15 Md. 314;  *Merryman*
v. *The State*, 5 Harr. & J. 423;  *Berthold* v. *Berthold*, 46 Md.
557;  *Robinson et al.* v. *Leavitt*, 7 N. H. 100 ; *Low* v. *Blodgett*,
1 Foster 121;  *Breck* v. *Blanchard*, 2 Foster 303;  *Heath* v.
*West*, 6 Foster 191;  *Drew* v. *Rust*, 36 N. H. 335.

I have examined these cases; and while some of them bear
but slightly on the deduction, which is drawn from them,
yet others of them as *Merryman* v. *The State, at the instance
of Harris use of Morrey*, 5 H. & J. 423;  *Whiting use of Sun
Mut. Ins. Co.* v. *Ind. Mut. Ins. Co.*, 15 Md. 314;  *Breck* v.
*Blanchard*, 2 Foster 303;  *Drew* v. *Rust*, 36 N. H. 335, bear
more directly on the question. If all of these cases are taken
together and in connection with other cases, which lay down
well settled principles as to when a debt is to be regarded as
extinguished by a payment made by some other person than
the debtor, I think the conclusion drawn is sustained, and
that if a creditor is paid his debt by some person  other than
his debtor under a mistake of law, it is not the duty of the
creditor to refund, and he can not be compelled so to do;
but he has a right still to proceed against the debtor for the
benefit of the person, who by such mistake has paid to him
the debt, and a court of equity will require him so to do.
This conclusion is, I think, in accordance with the spirit,
which underlies the decisions in our Court.   *Neely et al.*
v. *Jones et al.*, 16 W. Va. 625;  *McClasky & Crim et al.* v.

*O'Brien et al.,* 16 W. Va. 793, syl. 13; *Bland* v. *Arbuckle et al.,* 19 W. Va. 135. It is true, these cases were all of them materially different from the case under consideration; but the principles laid down in them are not inconsistent with the conclusion, which we have drawn, and the spirit, which pervades them, accords with the principle above stated.

In the case before us the plaintiff paid the debt supposing he was under an obligation to do so by virtue of contract with the female defendant. He was however under no such legal obligation; for this contract to do so was not legally binding upon him, as the contract was not, as we have seen, binding upon her, and therefore there was no mutuality in it. The plaintiff must therefore be regarded as one voluntarily paying this debt under a mistake, purely one of law; and therefore, while this payment did not confer a right of subrogation proper, yet it did not extinguish the debt, but it imposed on the commissioner, to whom the debt was paid, or more properly on the court, to whom the debt was due, and who had recovered the payment of the debt and disposed thereof, the duty of enforcing the payment of this debt (regarded by a court of equity as unextinguished); and it should be enforced against the original debtor by the sale of her land named in the contract, if necessary, for the benefit of the plaintiff. He cannot be properly regarded as intending to discharge this debt for her except upon condition, that she should convey the land to him as required by the written contract made with her. This contract is not binding on her, it is true; but she has a right to ratify the payment of her debt to the court by the plaintiff, in which case, this debt will be held both in law and equity as discharged. See *Neely* v. *Jones,* 16 W. Va. 625 syl. 3. But she can only ratify this payment or receive the advantage of it as discharging her debt to the court by complying with the condition, upon which alone it was paid, that is, by conveying to the plaintiff the land she agreed to convey to him. If this be not done by her, the debt is unextinguished by the payment of the plaintiff but should be still enforced for his benefit. In the second syllabus in *Neely et al.* v. *Jones et al.,* 16 W. Va. 625, it is laid down: "If a payment of debt be made by a stranger, which payment is neither authorized nor ratified

by the debtor, it will not be held to discharge the debt."
The fourth syllabus of the same case states, that in such
event the court of equity will enforce the debt in favor of the
party, who without authority paid the same.

It may be said however, that the female defendant by the
contract made with the plaintiff by her, expressly authorized
him to pay this debt for her, and by the principles laid down
in *Neely* v. *Jones*, 16 W. Va. 625, this payment extinguished
the debt.    But the female defendant being a married woman
is not bound by this contract, and may refuse to carry it out.
If she repudiated it as she had a right to do, it ceased to be
binding on the plaintiff, would become inoperative and void,
and everything done under it should be regarded as done
without any authority.    Under these circumstances, when
this contract is repudiated by the female defendant, the pay-
ments made under it by the plaintiff become unauthorized
payments by him, and are to be regarded as payments made
by a stranger unauthorized; and according to *Neely et al.* v.
*Jones et al*, 16 W. Va. 625, unless they are ratified by her,
which ratification can only be by a conveyance of the land to
him, the debt due from her to the court is not extinguished
and should by the court be enforced against her land for the
benefit of the plaintiff.

My conclusion therefore is, that if the female defendant
chooses to repudiate this contract and to refuse to convey the
land, which she contracted to convey to the plaintiff, she has a
right so to do; but then he is to be regarded just as a
stranger would be, who paid her debt without authority,
as this void contract was his only authority; and such un-
authorized payment did not discharge her debt, which should
now be enforced against her by the court for the benefit of
the plaintiff.    This enforcement might be of course by a sale
of her land bought of the court, the title of which was re-
tained as a lien to secure this debt.    So that the plaintiff on
the facts stated in his bill has in effect a lien on this land and
a right to enforce the same.

The circuit court therefore did not err in overruling the
demurrer; but it was an obvious error in the court on over-
ruling the demurrer to proceed immediately to render a final
decree in the case.    It should have given the defendant a

a day, in which to answer the bill. Section 30 of chapter 125 of Code of W. Va. page 603, provides: "If a demurrer to a bill be overruled, there shall be a rule upon the defendant to answer the bill; and if he fail to appear or answer the bill on the day specified in the order, the plaintiff shall be entitled to a decree against him for the relief prayed for therein." In this case the plaintiff was erroneously given this decree without such day to answer being given to the defendant.

Of course, if it becomes necessary for the court to enforce the payment of the portion of the purchase-money paid by the plaintiff either to court or to female defendant, treating it as unpaid purchase-money, she should be allowed as against it the rents and profits of this land, if any were received by the plaintiff, less the taxes on said land paid by him, if he has paid any. For as this unpaid purchase-money in view of a court of equity is enforced for the benefit of the plaintiff, it will be subject to such equitable abatements as may be proper, between the plaintiff and the female defendant.

The circuit court erred of course in its decree ordering a conveyance of any part of said land to the plaintiff.

Our conclusion is, that said decree of the circuit court must be affirmed, so far as it overrules the demurrer to the bill, and that it should in all other respects be reversed and annulled; and the appellant must recover of the appellee, Isaac Moore, her costs about her appeal in this Court expended; and this cause must be remanded to the circuit court of Pocahontas to be therein further proceeded with according to the principles laid down in this opinion, and further according to the principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

AFFIRMED IN PART.    REVERSED IN PART.    REMANDED.